## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CVS CORPORATION, | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) JURY TRIAL DEMANDED |
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY, NONINFRINGEMENT, AND UNENFORCEABILITY

Plaintiff CVS Corporation ("CVS") brings this Complaint against Defendant Ronald A. Katz Technology Licensing, L.P. ("RAKTL"). This is an action for a declaratory judgment and injunctive relief that the following patents are invalid, not infringed by CVS, and/or are unenforceable:

| Patent No. | Title | | Appendix Exhibit |
|---|---|---|---|
| 4,792,968 | Statistical analysis system for use with public communication facility | ("the '968 patent") | A |
| 4,930,150 | Telephonic interface control system | ("the '150 patent") | B |
| 5,128,984 | Telephone interface call processing system with call selectivity | ("the '984 patent") | C |
| 5,251,252 | Telephone interface call processing system with call selectivity | ("the '252 patent") | D |
| 5,255,309 | Telephonic-interface statistical analysis system | ("the '309 patent") | E |
| 5,351,285 | Multiple format telephonic interface control system | ("the '285 patent") | F |
| 5,561,707 | Telephonic-interface statistical analysis system | ("the '707 patent") | G |
| 5,684,863 | Telephonic-interface statistical analysis system | ("the '863 patent") | H |
| 5,787,156 | Telephonic-interface lottery system | ("the '156 patent") | I |
| 5,815,551 | Telephonic-interface statistical analysis | ("the '551 patent") | J |

| | system | | |
|---|---|---|---|
| 5,828,734 | Telephone interface call processing system with call selectivity | ("the '734 patent") | K |
| 5,898,762 | Telephonic-interface statistical analysis system | ("the '762 patent") | L |
| 5,917,893 | Multiple format telephonic interface control system | ("the '893 patent") | M |
| 5,974,120 | Telephone interface call processing system with call selectivity | ("the '120 patent") | N |
| 6,035,021 | Telephonic-interface statistical analysis system | ("the '021 patent") | O |
| 6,148,065 | Telephonic-interface statistical analysis system | ("the '065 patent") | P |
| 6,335,965 | Voice-data telephonic interface control system | ("the '965 patent") | Q |
| 6,349,134 | Telephonic-interface statistical analysis system | ("the '134 patent") | R |
| 6,424,703 | Telephonic-interface lottery system | ("the '703 patent") | S |
| 6,434,223 | Telephone interface call processing system with call selectivity | ("the '223 patent") | T |
| 6,512,415 | Telephonic-interface game control system | ("the '415 patent") | U |
| 6,678,360 | Telephonic-interface statistical analysis system | ("the '360 patent") | V |

(collectively referred to as "the asserted patents").

## THE PARTIES

1.      CVS is a corporation organized under the laws of the State of Delaware and has a

principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

2.      Upon information and belief, RAKTL is a California limited partnership and has a

principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles,

California 90069.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Laws of the United States (35 U.S.C. § 1, *et seq.*).

4.     This court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5.     This court has personal jurisdiction, general and specific, over RAKTL.

6.     Upon information and belief, RAKTL has systematic and continuous contacts in this judicial district.

7.     Upon information and belief, RAKTL regularly avails itself of the benefits of this judicial district, including the jurisdiction of the courts.  In fact, RAKTL has sued more than 85 defendants on one or more of the asserted patents in the Delaware District Court.

8.     Upon information and belief, RAKTL regularly transacts business within this judicial district.

9.     Upon information and belief, RAKTL derives substantial patent licensing revenue from corporations incorporated in Delaware.

10.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

11.    CVS is the largest pharmacy retailer in the United States, having more than 5,000 stores across the United States.

12.    In 2004, CVS acquired over 1,200 Eckerd Pharmacy Stores from J.C. Penney Corporation.

13.    CVS is currently in the process of converting some of the acquired Eckerd stores into CVS-branded stores.

14.    CVS operates telephone systems that RAKTL has alleged infringe one or more of the asserted patents.

15.    Upon information and belief, RAKTL purports to be the owner by assignment of each of the asserted patents.

16.    RAKTL has instituted lawsuits and alleged patent infringement of one or more of the asserted patents against companies that operate telephone systems.

17.    In particular, RAKTL has recently initiated numerous lawsuits across the United States in multiple judicial districts:

| Case No. | Case Name | Court | Judge |
|----------|-----------|-------|-------|
| 5:05-CV-142-DF | *Ronald A. Katz Tech. Licensing, L.P. v. Citibank, N.A. et al.* | Eastern District of Texas | David Folsom |
| 9:06-CV-00177-RHC | *Ronald A Katz Tech. Licensing, LP v. Alltel Corp., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00178-RHC | *Ronald A Katz Tech. Licensing, LP v. Chevron Corporation, et al.* | Eastern District of Texas | Ron Clark |
| 5:06-CV-00182-DF | *Ronald A Katz Tech. Licensing, LP v. Discover Financial Services, Inc., et al.* | Eastern District of Texas | David Folsom |
| 5:06-CV-00187-DF | *Ronald A Katz Tech. Licensing, LP v. Genesys Conferencing, Inc., et al.* | Eastern District of Texas | David Folsom |
| 5:06-CV-00188-DF-CMC | *Ronald A. Katz Tech. Licensing, L.P. v. American Electric Power Company et al.* | Eastern District of Texas | David Folsom |
| 9:06-CV-00191-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Cox Communication, et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00192-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. DirecTV Group, Inc., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00193-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Earthlink, Inc.* | Eastern District of Texas | Ron Clark |

| | | | |
|---|---|---|---|
| 9:06-CV-00194-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Tracfone Wireless, Inc.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00195-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Ford Motor Co., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00196-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Cullen/Frost Bankers, Inc., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00197-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. General Electric Capital Corp., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00198-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. General Motors Corp., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00199-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Humana, Inc.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00200-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. PNC Financial Services Group, Inc., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00201-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Regions Financial Corp., et al.* | Eastern District of Texas | Ron Clark |
| 9:06-CV-00202-RHC | *Ronald A. Katz Tech. Licensing, L.P. v. Safeco Ins. Co. of Am., et al.* | Eastern District of Texas | Ron Clark |
| 2:06-CV-00334-DF | *Ronald A Katz Tech. Licensing, LP v. American Airlines, et al.* | Eastern District of Texas | David Folsom |
| 2:06-CV-00335-TJW | *Ronald A Katz Tech. Licensing, LP v. AETNA, Inc., et al.* | Eastern District of Texas | T. John Ward |
| 1:06-CV-00543-GMS | *Ronald A. Katz Tech. Licensing, L.P. v. Reliant Energy Inc., et al.* | District of Delaware | Gregory Sleet |

| 1:06-CV-00544-GMS | *Ronald A. Katz Tech. Licensing, L.P. v. TD Banknorth Inc., et al.* | District of Delaware | Gregory Sleet |
| 1:06-CV-00545-GMS | *Ronald A. Katz Tech. Licensing L.P. v. Ahold, et al.* | District of Delaware | Gregory Sleet |
| 1:06-CV-00546-GMS | *Ronald A. Katz Tech. Licensing, L.P. v. Time Warner Cable Inc., et al.* | District of Delaware | Gregory Sleet |
| 1:06-CV-00547-GMS | *Ronald A. Katz Tech. Licensing, L.P. v. Am. Int'l Group, Inc., et al.* | District of Delaware | Gregory Sleet |

(collectively "RAKTL's ongoing lawsuits").

18.    Upon information and belief, RAKTL alleges that each of the named defendants

infringes one or more of the asserted patents that RAKTL purports to own.

19.    In 1:06-CV-00545-GMS (i.e., in the District of Delaware)("the Jean Coutu lawsuit")

RAKTL has alleged patent infringement by numerous parties including the Eckerd

Corporation, which is, upon information and belief, currently operating the Eckerd

stores not acquired by CVS.

20.    Specifically, RAKTL has asserted against the Eckerd Corporation a list of patents

similar to the asserted patents.

21.    Upon information and belief, an entity known as A2D, L.P. is the licensing arm of

RAKTL.

22.    Numerous conversations, written and oral, have taken place between CVS'

representatives and attorneys purporting to represent A2D, L.P. ("Katz's attorneys").

**RAKTL's Threats To Enforce Its Rights Against CVS**

2002 LETTER SENT TO CVS

23.    On September 3, 2002, Katz's attorneys sent a letter to CVS regarding RAKTL's

patent portfolio ("the 2002 letter").

24.    The 2002 letter included a list of patent "claims that have been of interest to other

companies in the health services field" including claims appearing in the '156, '309,

'551, and '707 patents.

25.    In the 2002 letter, Katz's attorneys highlighted their willingness to enforce the

identified RAKTL patents.  For example, the 2002 letter stated that the "breadth and

scope of the claims in the portfolio were demonstrated in an infringement lawsuit

brought by RAKTL...."

2003 PRESENTATION SHOWN TO CVS

26.    Upon information and belief, on April 29, 2003, Katz's attorneys gave a PowerPoint

presentation to CVS representatives regarding RAKTL's patent portfolio ("the 2003

presentation").

27.    The 2003 presentation included "examples of how CVS Corporation uses RAKTL's

patented technology."  The exemplary patents discussed by Katz's attorneys included

the '156, '223, '309, '551, and '707 patents.

28.    The "examples of how CVS Corporation uses RAKTL's patented technology"

included a limitation-by-limitation comparison of certain claims recited in the '156,

'223, '309, '551, and '707 patents to, *inter alia*, CVS' "Rapid Refill Prescription

Service."

29.    The 2003 presentation stated that RAKTL has been "successful in litigating, when

necessary, to protect its patent rights."  The 2003 presentation further stated that "the

patents have been in litigation seven times" and that "two cases are currently pending."

<u>CVS' MEETINGS WITH KATZ'S ATTORNEY</u>

30.    On or about January 22, 2004, representatives of CVS met with Katz's attorneys for an in-person meeting ("the 2004 meeting").

31.    On or about January 21, 2005, representatives of CVS held a phone call with Katz's attorneys ("the January 2005 call").

32.    On or about July 1, 2005, representatives of CVS held a phone call with Katz's attorneys ("the July 2005 call").

33.    On or about December 5, 2005, representatives of CVS met with Katz's attorneys for an in-person meeting ("the 2005 meeting").

34.    On or about July 17, 2006, representatives of CVS met with Katz's attorneys for an in-person meeting ("the 2006 meeting").

35.    During the 2004 meeting, the January 2005 call, the July 2005 call, the 2005 meeting, and the 2006 meeting, Katz's attorneys asserted that CVS required a license to the '156, '223, '309, '551, and '707 patents.

36.    During the 2006 meeting, CVS represented that it had no need to obtain a license from RAKTL for the patents identified in paragraphs 24 and 27 due to either expiration of the patents, the filing or a request for reexamination, and/or the granting of a reexamination requests. Nevertheless, Katz's attorneys at the 2006 meeting asserted that a license was required for one or more of the other RAKTL patents listed in the 2003 presentation without, however, naming specific patents. Katz's attorneys said the patents identified in the prior written communications (i.e., the

2002 letter and the 2003 presentation) were identified to be exemplary patents and that certain additional RAKTL patents required a license.

37. During the 2006 meeting, after CVS suggested that it had no need to obtain a license from RAKTL, Katz's attorneys brandished a threat of a filing a lawsuit against CVS by referring to other ongoing litigations in which at least one other drugstore chain had been sued.

38. These assertions placed CVS in a clear apprehension of a lawsuit being filed against it, asserting one or more of the as yet unidentified patents listed in the 2003 presentation plus the '156, '223, '309, '551, and '707 patents, if CVS did not take a license to the RAKTL patent portfolio.

39. Subsequent to the 2006 meeting, CVS further attempted to negotiate with Katz's attorneys to achieve an acceptable licensing arrangement.

40. CVS along with, *inter alia*, The Jean Coutu Group (PJC) USA, Inc., Eckerd Corporation, Brooks Pharmacy, Inc., Maxi Drug, Inc., Maxi Drug North, Inc., Rite Aid Corporation, and Rite Aid of Delaware, Inc. have participated in ongoing negotiations with Katz's attorneys to obtain a license to RAKTL's patent portfolio.

41. In early 2006, CVS participated with a group of other companies ("the negotiating group") who were attempting to negotiate a license agreement to RAKTL's patent portfolio.

42. More specifically, CVS legal representatives met with Katz's attorneys on November 30, 2006. The tenor of that meeting was clear. Katz's attorneys had made their final offer. If CVS did not take a license on terms dictated by RAKTL, RAKTL would

seek to protect its rights through all available means. RAKTL assured CVS that it would target all CVS retail drug stores if CVS decided not to settle.

43.     On or about October 10, 2006, CVS elected to participate in a meeting of the joint negotiations with Katz's attorneys.

44.     Before the November 30, 2006 meeting and on or just prior to October 25, 2006, other retail pharmacies opted to not join the negotiating group.

45.     On or about October 25, 2006, RAKTL sued The Jean Coutu (PJC) USA, Inc., Eckerd Corporation, Brooks Pharmacy, Inc., Maxi Drug, Inc., Maxi Drug North, Inc., Rite Aid Corporation, and Rite Aid of Delaware, Inc. in the Jean Coutu lawsuit.

46.     On December 18, 2006, CVS informed the negotiating group that CVS was withdrawing from further group negotiations. Upon information and belief, the remaining members of the negotiating group informed Katz's attorneys of CVS' withdrawal from the negotiating group.

47.     Due to CVS' present apprehension of being sued by RAKTL, CVS has terminated its negotiations with the negotiating group. RAKTL has sued under similar circumstances as detailed herein.

48.     Since CVS continues to believe that a license is not necessary because it does not infringe any valid enforceable claim of RAKTL's patents, CVS has informed Katz's attorneys that it will not license the RAKTL patent portfolio on the terms offered by RAKTL, terminating negotiations by way of a communication sent to Katz's attorney on December 19, 2006. Due to its present apprehension of being sued by RAKTL based on, *inter alia*, the lawsuits filed against The Jean Coutu Group (PJC) USA, Inc., and other similarly situated parties, CVS has filed the present action.

49.    In the Jean Coutu lawsuit RAKTL has asserted the '968, '150, '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents against The Jean Coutu Group (PJC) USA, Inc., Eckerd Corporation, Brooks Pharmacy, Inc., Maxi Drug, Inc., and Maxi Drug North, Inc.

50.    Furthermore, in the Jean Coutu lawsuit RAKTL has also asserted the '968, '150, '984, '252, '309, '285, '707, '863, '551, '734, '893, '120, '021, '134, '703, and '223 patents against Rite Aid Corporation, and Rite Aid of Delaware, Inc.

51.    RAKTL's assertion that CVS would require a license to additional patents beyond those identified in the 2002 letter and/or the 2003 presentation and its assertion of a broad base of patents against defendants in the Jean Coutu lawsuit has placed CVS in further immediate apprehension of being sued by RAKTL on patents other than those identified in the 2002 letter and/or the 2003 presentation as patents of interest.

52.    Thus, CVS is under present apprehension of being sued by RAKTL as each of the asserted patents has been asserted against other defendants that are similarly situated to CVS.

### 2003 LETTER SENT TO J.C. PENNEY CORPORATION

53.    On June 24, 2003, Katz's attorneys sent a letter to the J.C. Penney Corporation regarding RAKTL's patent portfolio ("the 2003 letter"). Upon information and belief, as of June 24, 2003, J.C. Penney Corporation was the owner of the Eckerd stores including those Eckerd stores now acquired by CVS.

54.    Upon information and belief, the 2003 letter was provided to CVS for the first time on or about December 1, 2005 by a letter sent by Laurie Adams of Heller Ehrman.

55. The 2003 letter included a list of patent claims that have been of interest to other companies operating in the health services field including claims appearing in the '065, '156, '223, '415, '547, '707, '863, '893, and '965 RAKTL patents.

56. In the 2003 letter, Katz's attorneys asked for a meeting "designed to provide element-by-element examples of how exemplary RAKTL claims (which may not conform exactly to the list above) apply to J.C. Penney's operations."

57. In the 2003 letter, Katz's attorneys stated that the "breadth and scope of the claims in the portfolio were demonstrated in an infringement lawsuit brought by RAKTL...."

## INEQUITABLE CONDUCT

58. Upon information and belief, one or more of the asserted patents are also unenforceable due to the pattern and practice of inequitable conduct committed by RAKTL, Ronald A. Katz and/or their agents or attorneys (collectively "Katz") before the United States Patent and Trademark Office ("USPTO") as part of the prosecution of the asserted patents and/or related patents and patent applications thereto as described below.

59. Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for Patent Examination Procedure ("M.P.E.P.") § 2000.01, et seq. impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the U.S. Patent and Trademark Office ("USPTO"), which requires he or she to disclose to the USPTO all information that is material to the patentability of the application under examination. Breach of this duty of candor, good faith, and honesty with an intent to deceive the USPTO constitutes inequitable conduct so as to render the affected patents unenforceable.

60.    Upon information and belief, Katz exercised a pattern and practice of conduct that was intended to deceive the USPTO into issuing patent claims having respective scopes beyond that to which Katz was entitled. Katz exercised this pattern of deceptive conduct as part of the prosecution of the applications that ultimately issued as one or more of the asserted patents, and related applications. The deceptive conduct by Katz violated the duty of candor, good faith, and honesty that is owed by patent applicants.

61.    In addition to the asserted patents, other related patents and applications to which the asserted patents claim priority are relevant to the present action based on Katz's inequitable conduct. These related patents include U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,014,298 ("the '298 patent"), 5,048,075 ("the '075 patent"), 5,073,929 ("the '929 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"), 5,365,575 ("the '575 patent"), and 6,016,344 ("the '344 patent"). The related applications include U.S. Patent Application Nos. 06/753,299, ("the '299 application"), 07/342,506 ("the '506 application") and 07/640,337 ("the '337 application").

62.    Upon information and belief, on multiple occasions as part of the prosecution of the asserted patents and in related patents and/or applications and with the intent to deceive the USPTO, Katz intentionally: (I) failed to disclose material prior art known to Katz; (II) failed to inform the USPTO of inconsistent positions taken during prosecution; (III) failed to identify or disclose material information from related litigations or proceedings; (IV) failed to inform patent examiners of adverse findings by other examiners; and (V) made false claims of priority so as to avoid the prior art.

These repeated and intentional violations of Katz's duty of candor, good faith, and honesty, which are described in detail below, render one or more of the asserted patents invalid and unenforceable.

**Katz intentionally failed to disclose material prior art**

63.     Upon information and belief, as part of the prosecution of the asserted patents and related patents and applications, Katz repeatedly failed to disclose material references known to Katz with the intent to deceive the USPTO, as set forth below.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE BARGER PATENT

64.     Upon information and belief, Katz had knowledge of U.S. Patent No. 4,071,698 to Barger, Jr. *et al.* ("the Barger patent") at least as early as January 1989. Katz failed to disclose the Barger patent to the USPTO patent examiner as part of the prosecution of several of the asserted patents and related patents and/or applications, including at least the '739, '150, '298, '929, '984, and '252 patents, which were pending as of, or filed after, January 1, 1989.

65.     The Barger patent is prior art to the asserted patents because it was filed in the USPTO on January 10, 1977, a full eight years before the effective filing date of Katz's first patent.

66.     The Barger patent is material to the asserted patents. The Barger patent discloses an automated interactive voice system for marketing merchandise, such as audio recordings. A customer can select and listen to an audio sample and can arrange payment by credit card or other means. The system can maintain a complete record of all transactions—including requests for demonstrations played by each customer—in order to maintain current inventory records and determine trends. The system can

use the transaction history to determine whether a customer is a "free loader" and can limit the customer's access to the system accordingly.

67. The system disclosed in the Barger patent is also capable of assigning a caller to an operator who can obtain information from the customer and enter the information into a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and the audio sample is played to the customer. Upon completion of the demonstration, the system can return the customer to a live operator, who can take an order or provide another audio sample for the caller to listen to.

68. Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the USPTO in deciding whether to allow the claims of the asserted patents and related patents and/or applications. For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

69. Upon information and belief, the materiality of the Barger patent to the asserted patents was confirmed by the USPTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed a patent examiner's rejection of certain of Katz's pending claims based in part on the disclosure of the Barger patent.

70. Upon information and belief, the materiality of the Barger patent to the asserted patents was further confirmed by the USPTO in Reexam Control No. 90/008,057 (Reexamination of the '285 patent). In an order granting reexamination of the '285

patent, dated July 27, 2006, the USPTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

71.    Upon information and belief, the materiality of the Barger patent to the asserted patents was further confirmed by the USPTO in Reexam Control No. 90/008,039 (Reexamination of the '551 patent). In an order granting reexamination of the '551 patent, dated July 21, 2006, the USPTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

72.    Upon information and belief, the materiality of the Barger patent to the asserted patents were further confirmed by the USPTO in Reexam Control No. 90/008,051 (Reexamination of the '223 patent). In an order granting reexamination of the '223 patent, dated July 21, 2006, the USPTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

73.    Upon information and belief, the materiality of the Barger patent to the asserted patents were further confirmed by the USPTO in Reexam Control No. 90/008,095 (Reexamination of the '863 patent). In order granting reexamination of the '223 patent, dated September 22, 2006, the USPTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

74.    Upon information and belief, Katz had knowledge of the materiality and relevance of the Barger patent to the claims of the asserted patents that Katz prosecuted before the USPTO. Upon information and belief, Katz became aware of the Barger patent on or about December 1988 as part of the prosecution of an international application (WO 87/000375), which is based on Katz's U.S. Patent Application No. 06/753,299 ("the '299 application"). As part of the prosecution of the WO 87/000375 application, the

European Patent Office ("EPO") identified the Barger patent as "particularly

relevant" in regard to the patentability of the claims. In addition, the EPO sent the

international search report identifying the Barger patent as "particularly relevant" to

Katz's European attorney, Mr. Graham F. Coles, on or about December 27, 1988.

75.     Notably, all of the asserted patents claim priority to the '299 application. Thus, the

international search report put Katz on notice both of the existence and materiality of

the Barger patent to the subject matter claimed in the asserted patents.

76.     Upon information and belief, Katz considered the Barger patent so significant that

Katz ultimately acquired the patent by assignment through First Data Resources Inc.

("First Data") on November 2, 1990 and by subsequent assignment to RAKTL on

September 17, 1994.

77.     Notwithstanding Katz's knowledge of the Barger patent, upon information and belief,

Katz failed to disclose this piece of prior art to the USPTO as part of the prosecution

of at least the '739, '150, '298, '929,'984, and '252 patents.

78.     In addition, Katz did not disclose the existence of the Barger patent to the USPTO as

part of the substantive prosecution of the '285 patent. Rather, Katz waited until after

the Notice of Allowance was issued by the USPTO and after the issue fee was paid to

disclose the Barger patent, only seven days before the '285 patent issued.

79.     Upon information and belief, Katz intentionally withheld the material Barger patent

from the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984,

'252, and '285 patents with the intent to deceive the USPTO into issuing patent

claims of a scope beyond which Katz was entitled, thereby committing inequitable

conduct and rendering those patents unenforceable. These patents are either included

in the asserted patents, in the case of the '150, '984, '252, and '285 patents, and/or are patents from which the asserted patents claim priority and which share related, material subject matter.

80.   The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '252, and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

81.   At least the '156 patent claims priority from and claims subject matter related to both the '150 and '285 patents to which the Barger patent is also material. Accordingly, at least the '156 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

82.   Likewise, all of the asserted patents, except the '968 and '150 patents claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material. The close relationship between these children patents and the '739 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '863, '551, '065 and '360 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '739 patent. Accordingly, one or more of the asserted patents are unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

83.   Similarly, at least the '965 patent claims priority from and claims subject matter related to both the '153 and the '298 patents to which the Barger patent is also

material. Accordingly, at least the '965 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '153 and the '298 patents.

84.    Likewise, at least the '734, '120, and '223 patents claim priority from and claim subject matter related to the '929, '984, and '252 patents to which the Barger patent is also material. The close relationship between the '734, '120 and '223 patents and the '984 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '984 patent. Accordingly, at least the '734, '120, and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984, and '252 patents.

85.    Accordingly, at least the '134, '150, '156, '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Barger patent to the USPTO.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE DEBRUYN PATENT

86.    Upon information and belief, Katz had knowledge of European Patent No. 0032410 to DeBruyn ("the DeBruyn patent") at least as early as January 1989. Katz failed to disclose the DeBruyn patent to the USPTO during the prosecution of certain of Katz's patents, including at least the '150, '984, '252, and '285 patents, which are part of the asserted patents, as well as the related '739 and '929 patents. Except for the '968 and the '150 patent, all of the asserted patents claim priority to one or more of these patents.

87. The DeBruyn patent is prior art to the asserted patents because it was published by the EPO as European Patent Specification EP0032410A1 on July 22, 1981.

88. The DeBruyn patent is material to the asserted patents. The DeBruyn patent discloses an interactive voice system for implementing a lottery. The system receives a call from a prospective player along with the player's telephone number. Both French and English speaking players are accommodated by the same system by receiving calls dialed to different telephone numbers. A caller's access to the system may be restricted based on various criteria such as the number times a caller accesses the system per week or the amount wagered. DeBruyn also discloses issuing secret codes to prospective players that can also be entered into the system before access is granted to the caller.

89. The DeBruyn patent discloses that, after a player gains access to the system, the player is cued to enter a lottery number using a telephone keypad. After the player enters the lottery number, the system stores the lottery number and the player's telephone number. The system will also parrot back to the caller the lottery number entered to confirm proper entry of the desired lottery number for play before subsequently disconnecting the call.

90. Because the DeBruyn patent discloses many features relevant to the claims in the asserted patents and/or related patents and applications, it would have been material to the USPTO in deciding whether to allow the claims of the asserted patents. For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data,

processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

91.    Upon information and belief, the DeBruyn patent is substantively identical to Canadian Patent No. 1,162,336 to DeBruyn ("The DeBruyn Canadian patent"), which has been relied upon by the Director of the USPTO in ordering the reexamination of several of Katz's patents, including the '707 and '309 patents. With respect to the '309 patent, for example, upon information and belief, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6. Upon information and belief, the Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 (which is related to one or more of the asserted patents) and '707 patents under 35 U.S.C. § 102. Like most of the asserted patents, each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

92.    Further, a patent examiner at the USPTO has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19. The

patent examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 under 35 U.S.C. § 103. *Id.* at 2, 32-43.

93.     Upon information and belief, Katz became aware of the DeBruyn patent and its materiality to the subject matter claimed in the asserted patents at least as early as January 1989. The same international search report that identified the Barger patent and, upon information and belief, was sent to Katz's European attorney, Mr. Graham F. Coles, on December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to the patentability of the claims of Katz's '299 application.

94.     Notwithstanding Katz's knowledge of the DeBruyn patent and its materiality, upon information and belief, Katz failed to disclose this material prior art to the USPTO as part of the prosecution of at least the '150, '075, '739, '929, '984, and '252 patents.

95.     In addition, Katz did not disclose the existence of the DeBruyn patent to the USPTO during the substantive prosecution of the '285 patent. Rather, Katz waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the DeBruyn patent, only seven days before the '285 patent issued.

96.     Upon information and belief, Katz intentionally withheld the material DeBruyn patent from the USPTO as part of the prosecution of at least the '150, '285, '739, '075, '929, '984, and '252 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either part of the asserted patents, in the case of the '150, '984 and '285 patents, and/or are patents from which asserted patents claim priority and which share related, material subject matter.

97.     The inequitable conduct committed by Katz with respect to at least the '150, '285, '739, '075, '929, '984, and '252 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the DeBruyn patent is material, rendering these related patents unenforceable.

98.     At least all of the asserted patents, except the '968 and '150 patents, claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material. Accordingly, at least the '134, '156, '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

99.     Similarly, at least the '734, '120, and '223 patents, which are part of the asserted patents, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material. The close relationship between these children patents and those to which they claim priority is evidenced by terminal disclaimers filed by Katz for at least the '734, '120, and '223 patents, effectively conceding that there is no patentable difference between the subject matter claimed in the '734 patent and that disclosed in the '252 patent. Accordingly, at least the '734, '120, and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984, and '252 patents.

100.    Accordingly, at least the '134, '156, '150, '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents are all

rendered unenforceable for inequitable conduct due to Katz's intentional failure to
disclose the DeBruyn patent to the USPTO.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE YOSHIZAWA ARTICLE

101. Upon information and belief, during prosecution on the merits of at least the '309 and
'575 patents, Katz failed to disclose a prior art article entitled "Voice Response
System for Telephone Betting" by Yoshizawa et al. ("the Yoshizawa article") that
appeared in the 1977 issue of *Hitachi Review* magazine. The '309 patent, which is
one of the asserted patents, is the parent to the '707 patent, another of the asserted
patents. Upon information and belief, Katz had knowledge of the Yoshizawa article
at least as early as 1992, during the prosecution of the '309 and '575 patents before
the USPTO. Nevertheless, Katz did not disclose the Yoshizawa article to the patent
examiner during the prosecution of the '575 patent until September 16, 1994. This
submission of the Yoshizawa article occurred after substantive examination of the
application and after payment of the issue fee. Katz did not disclose the Yoshizawa
article during the prosecution of the '309 patent. Accordingly, the Yoshizawa article
was not considered by the patent examiner in determining patentability of the '309 or
'575 patents.

102. The Yoshizawa article discloses an automated off-track betting system. The system
includes a voice response unit, a public telephone network, and a central processing
unit.

103. Incoming calls are answered by the voice response unit prompting the caller to enter
an account number and password, and then select one or more pari-mutuel tickets; for
example, a wager on a horse to show. The entered data is then stored in the caller's
account file. Each wager is counted against a preset daily wagering limit. The caller

is provided with a registration number referencing the transaction. Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account. The article specifically mentions that the system could be used for "winning lot number service"—in other words, a lottery.

104. Many features relevant to the '309 patent claims are disclosed in the Yoshizawa article. For instance, Yoshizawa discloses an interface structure for interfacing remote terminals and receiving data from said remote terminals, a voice generator structure for providing the remote terminals with vocal operating instructions, record structure for initiating files and storing data received from said remote terminals, and qualification structure for limiting the extent of access of the system by the callers.

105. Similarly, many features relevant to the '575 patent claims are disclosed in the Yoshizawa article. For example, Yoshizawa discloses limiting access and use to a telephone based gambling or lottery system and qualifying callers based on an account number.

106. Upon information and belief, Katz was aware of the materiality of Yoshizawa article at least as early as September 2, 1992—more than a year before the issuance of the '309 patent and over two years before the issuance of the '575 patent-when it was cited in response to interrogatories in the *First Data Resources Inc. v. West Interactive Corp.* Civil Action No. 91-4471-TJH (C.D. Cal. Aug. 20, 1991)("the West case") litigation.

107. Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality, upon information and belief, Katz failed to disclose this material prior art reference to the

USPTO as part of the prosecution of at least the '309 and '575 patents in violation of Katz's duty of candor.

108.    Upon information and belief, Katz intentionally withheld the material Yoshizawa article from the USPTO as part of the prosecution of at least the '309 and '575 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '309 and '575 patents unenforceable.

109.    This inequitable conduct committed by Katz with respect to at least the '309 and '575 patents taints other related patents, which claim priority to the '309 and '575 patents and which claim related subject matter to which the Yoshizawa article is material, rendering these related patents unenforceable.

110.    At least, the '707 patent, which is part of the asserted patents, claims priority from and claims subject matter related to the '309 patent to which the Yoshizawa article is material. The related nature of the '309 patent and the subsequently filed patents is further evidenced by terminal disclaimers filed as part of the prosecution of both the '309 and '707 patents.

111.    Accordingly, at least the '309 and '707 patents are rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '309 patent.

112.    Similarly, at least the '156 patent claims priority from and claims subject matter related to the '575 patent to which the Yoshizawa article is also material. The related nature of the '575 patent and the subsequently filed patents is further evidenced by terminal disclaimers filed as part of the prosecution of at least the '156 patent,

effectively conceding that there is no patentable distinction between this patent and the '575 patent.

113.    Accordingly, at least the '156 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE FLORAFAX BROCHURE

114.    Upon information and belief, prior to Katz paying the issue fee on June 29, 1994 for the '575 patent, Katz had knowledge of a brochure dated January 22, 1986 and circulated by Florafax during this timeframe ("the Florafax brochure"). Katz, however, did not disclose this brochure to the USPTO prior to the payment of the issue fee for the '575 patent.

115.    The Florafax brochure is material to at least the '575 patent. The Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet. After purchasing the bouquet, the sender receives a card from the florist that includes a telephone number and an ID number printed thereon. Upon calling the number indicated, the sender is prompted to enter the ID number and record a personal message. When the flowers are delivered, a corresponding card instructs the recipient to call a specified telephone number to hear the sender's prerecorded message. The message may only be played twice before it is automatically erased. The Florafax "Talking Bouquet" system was test marketed at least as early as December 1985, thereby evidencing public use of the concepts embodied in the brochure.

116.    The Florafax brochure and associated service operation disclose many of the features claimed in the related '575 patent.  For example, providing cards or tickets with an identification number printed thereon for access to an automated interactive system.

117.    Upon information and belief, Katz was made aware of the Florafax reference through the *First Data Resources Inc. v. West Interactive Corp.* litigation, prior to paying the issue fee for the application issuing as the '575 patent.

118.    Upon information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it to the USPTO as part of the prosecution on the merits of at least the '575 patents in violation of Katz's duty of candor.

119.    Upon information and belief, Katz intentionally withheld the material Florafax brochure from the USPTO prior to the payment of the issue fee during prosecution of the '575 patent.  Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575 patent unenforceable.

120.    This inequitable conduct committed by Katz with respect to at least the '575 patent taints other related patents, which claim priority to the '575 patent and which claim related subject matter to which the Florafax brochure is material, rendering these related patents unenforceable.

121.    At least the '703 patent, which is part of the asserted patents, claims priority from and claims subject matter related to the '575 patent to which the Florafax brochure is also material.  At least the '703 patent is likewise rendered unenforceable due to the

inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

122.    Accordingly, at least the '575 patent is rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Florafax brochure to the USPTO.

## KATZ INTENTIONALLY FAILED TO DISCLOSE THE PERDUE AND THE HESTER ARTICLES

123.    Upon information and belief, during prosecution on the merits of at least the '309 patent, Katz failed to disclose a prior art article entitled "Conversant I Voice System: Architecture and Applications" by Perdue, *et al.* ("the Perdue article"), that appeared in the September/October 1986 issue of the *AT&T Technical Journal*.  Upon information and belief, Katz was made aware of the Perdue article before the filing of the '309 patent during the prosecution of U.S. Patent Nos. 5,109,404 ("the '404 patent") and 5,218,631 ("the '631 patent") before the USPTO.  Specifically, the Perdue article was cited by the patent examiner first during the prosecution of the '404 patent in an office action dated June 3, 1991, then again during the prosecution of the '631 patent in an office action dated June 17, 1991.  Katz, however, did not disclose the Perdue article during the prosecution of the '309 patent.  Accordingly, the Perdue article was not considered by the patent examiner in determining patentability of the '309 patent.

124.    Upon information and belief, during prosecution on the merits of at least the '309 patent, Katz also failed to disclose a prior art reference entitled "The AT&T Multi-Mode Voice Systems — Full Spectrum Solutions for Speech Processing Applications" by Hester *et al.* ("the Hester article"), as presented at the Proceedings

of the 1985 *AVIOS Conference*. Upon information and belief, Katz was made aware of the Hester article before the filing date of the '309 patent, during the prosecution of the '404 patent before the USPTO. Specifically, the Hester article, like the Perdue article, was cited by the patent examiner during the prosecution of the '404 patent in an office action dated June 3, 1991—more than two years before the issuance of the '309 patent. Nevertheless, Katz did not disclose the Hester article to the patent examiner during the prosecution of the '309 patent. Accordingly, the Hester article was not considered by the patent examiner in determining patentability of the '309 patent.

125.    Both the Perdue and Hester articles are material to the patentability of the '309 patents as the Perdue and Hester articles disclose the architecture, operation, and applications of the "Conversant I" system which was made and used by AT&T in detail. The "Conversant I" system was a programmable interactive voice response system that was used for telephonic access and interaction by callers. The "Conversant I" system was also the subject of the an article entitled, "AT&T's Conversant I Voice system" by Moosemiller ("Moosemiller article") that appeared in the March/April 1986 issue of *Speech Technology*. The Moosemiller article, which was only six pages in length, was used later by the USPTO during the reexamination of the '309 to invalidate 14 claims on the basis of anticipation. The Moosemiller article disclosed the same system, architecture, and applications present in the "Conversant I" system. The Perdue and Hester articles provide greater detail regarding the "Conversant 1" system and would therefore have been material to the examination of the '309 patent.

126.   Upon information and belief, the materiality of Perdue to the asserted patents was further confirmed by the USPTO in Reexam Control No. 90/008,155 (Reexamination of the '734 patent). In an order granting reexamination of the '734 patent, dated November 6, 2006, the USPTO found that a substantial new question of patentability existed, at least in part, in view of Perdue.

127.   Upon information and belief, Katz was aware of the materiality of Perdue and Hester articles before the application which led to the '309 patent was filed.

128.   Notwithstanding Katz's knowledge of the Perdue and Hester articles and their materiality, upon information and belief, Katz failed to disclose these material prior art references to the USPTO as part of the prosecution of at least the '309 patent in violation of Katz's duty of candor.

129.   Upon information and belief, Katz intentionally withheld the material Perdue and Hester articles from the USPTO as part of the prosecution of at least the '309 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '309 patent unenforceable.

130.   This inequitable conduct committed by Katz with respect to at least the '309 patents taints other related patents, which claim priority to the '309 patent and which claim related subject matter to which the Perdue and Hester articles are material, rendering these related patents unenforceable.

131.   Accordingly, at least the '707 patent, which is one of the asserted patents, claims priority from and claims subject matter related to the '309 patent to which the Hester and Perdue articles are also material. The related nature of the '309 patent and the

subsequently filed patents is further evidenced by the terminal disclaimers filed as part of the prosecution of both the '309 and '707 patents.

132.    Accordingly, at least the '309 and '707 patents are rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '309 patent.

### KATZ INTENTIONALLY FAILED TO DISCLOSE KATZ'S OWN INTERNATIONAL APPLICATION WO 87/00375

133.    Upon information and belief, Katz had knowledge of and failed to disclose Katz's own published international application WO 87/00375 ("the WO '375 application") to the USPTO prior to the payment of the issue fee during prosecution of the '285 patent, which is one of the asserted patents. Upon information and belief, Katz also failed to disclose the WO '375 application as part of the prosecution of at least the related '739 patent.

134.    The WO '375 application teaches a statistical analysis system for use in conjunction with a public communication facility. When the system receives a call, a voice generator prompts the caller for information such as a key number or the caller's telephone number. If available, the caller's telephone number may be taken directly from the communication facility. After qualifying the caller using the number received, the system retrieves polling-type data from the callers that is combined with stored data to isolate a select subset of callers. Upon information and belief, the WO '375 application has the same specification as the initial U.S. '299 application Katz filed to which all other of the asserted patents claim priority and discloses much of the same subject matter incorporated in subsequent patents claiming priority to it.

135.    The WO '375 application was filed under the Patent Cooperation Treaty ("PCT") and published on January 15, 1987. Pursuant to 35 U.S.C. § 102(b), the WO '375

application may be considered prior art for any claims having an effective filing date more that one year after the January 15, 1987 publication date.

136.    The '739 and '285 patents were all filed more than one year after the publication date of January 15, 1987. The '739 and '285 patents incorporate additional subject matter in their respective specifications relative to the WO '375 application. Further, the '739 and '285 patents claim additional subject matter relative to the WO '375 application. Therefore, the WO '375 application can be considered as prior art for any new matter that was added and claimed in the '739 and '285 patents.

137.    The WO '375 application would have been material to the patent examiner in determining what claims, if any, Katz was entitled to in the '285 patent and the related '739 patent. For example, the materiality of the WO '375 application was confirmed by the USPTO when it was cited against the '984 patent by the patent examiner in May of 1991. In particular, the WO '375 application would be relevant to the basic elements claimed in the '739 and '285 patents, such as prompting callers with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

138.    Upon information and belief, Katz was aware of the duty to disclose information material to the patentability of any of Katz's pending patent applications. Katz had personal knowledge of the public disclosure of the WO '375 application. Katz failed to disclose the WO '375 application to the patent examiner as part of the prosecution of at least the '739 patent. Katz also failed to disclose the WO '375 application to the patent examiner prior to the payment of the issue fee during prosecution of the '285 patent. Therefore, the WO '375 application was not considered by the patent

examiners in determining patentability as part of the prosecution on the merits of either the '739 or '285 patents.

139. Upon information and belief, Katz intentionally withheld the WO '375 application from the USPTO as part of the prosecution on the merits of at least the '739 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either included in the asserted patents, in the case of the '285 patent, and/or are patents from which one or more of the asserted patents claim priority and which share related, material subject matter.

140. The inequitable conduct committed by Katz with respect to at least the '739 and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the WO '375 application is material, rendering these related patents unenforceable. For example, all of the asserted patents, with the exception of the '968 and the '150 patents, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application is also material. Accordingly, at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed in the parent '739 patent.

141. Accordingly, at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the WO '375 application to the USPTO.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE DAUDELIN '995 PATENT

142.    Upon information and belief, Katz had knowledge of U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") prior to the issuance the '120 patent. Katz, however, did not disclose the Daudelin '995 patent during the prosecution of at least the '120 patent, which is one of the asserted patents.

143.    Upon information and belief, the Daudelin '995 patent, which was filed on October 8, 1986 and issued on July 24, 1990, is prior art to at least the '120 patent, which was filed in 1995.

144.    The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent. The Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products. Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

145.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent claims receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

146.    Upon information and belief, Katz was aware of the Daudelin '995 patent at least as early as during the prosecution of the '120 patent, having cited it to the USPTO more than two years prior to the issuance of the '120 patent. Upon information and belief,

Katz listed the '995 patent in previous IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

147.   Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

148.   The inequitable conduct committed by Katz with respect to the '120 patent taints other related patents, which claim priority to '120 patent and which claim related subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

149.   At least the '223 patent, which is one of the asserted patents, claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin '995 patent is material.  Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.

150.   Accordingly, at least the '120, and '223 patents are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the USPTO.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE SZLAM '911 PATENT

151.   Upon information and belief, Katz was aware of U.S. Patent No. 4,797,911 ("the Szlam '911 patent") at least as early as October 5, 1989.  Katz, however, did not disclose the Szlam '911 patent during the prosecution of at least the '309 patent, which is one of the asserted patents.

152.    Upon information and belief, the Szlam '911 patent, which was filed on June 16, 1987 and issued on January 10, 1989, is prior art to at least the '309 patent, which was filed on December 3, 1991.

153.    The Szlam '911 patent discloses a call center for receiving incoming calls, processing ANI to retrieve customer information, reviewing keypad information for placing or changing orders and connecting to an agent if needed.  Further, it would have been obvious to combine the subject matter disclosed in the Szlam '911 patent with that disclosed in the Perdue and Hester articles.

154.    The Szlam '911 patent is material to certain of the claimed subject matter under consideration during prosecution of at least the '309 patent.  The '309 patent claims subject matter including interface structure for receiving calls from terminals, including ANI, providing voice signals to callers, memory storage structure for storing data pertaining to callers as identified by ANI, structure for limiting extent of access to the system by callers, and assigning designations to callers.  Because the Szlam '911 patent discloses many of the features claimed in the '309 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '309 patent.

155.    Upon information and belief, Katz was aware of the Szlam '911 patent during the prosecution of the '309 patent since it was disclosed by Katz to the patent examiner of the '150 patent in an amendment dated October 5, 1989.  Katz stated "… the following patents are deemed relative to the present application: … U.S. Patent 4,797,911 – Szlam et al. – CUSTOMER ACCOUNT ON-LINE SERVICING SYSTEM." Page 5, Amendment dated October 5, 1989.

156.    Upon information and belief, Katz intentionally withheld the material Szlam '911
        patent from the USPTO during the prosecution of at least the '309 patent with the
        intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz
        was entitled, thereby committing inequitable conduct and rendering the '309 patent
        unenforceable.

157.    The inequitable conduct committed by Katz with respect to the '309 patent taints
        other related patents, which claim priority to '309 patent and which claim related
        subject matter to which the Szlam '911 patent is material, rendering these related
        patents unenforceable.

158.    At least the '707 patent, which is one of the asserted patents, claims priority to the
        '309 patent and claims subject matter related to the '309 patent, to which the Szlam
        '911 patent is material.  Accordingly, at least the '707 patent is rendered
        unenforceable due to the inequitable conduct committed by Katz as part of the
        prosecution of the related '309 patent.

159.    Accordingly, at least the '309 and '707 patents are rendered unenforceable for
        inequitable conduct due to Katz's intentional failure to disclose the Szlam '911 patent
        to the USPTO.

KATZ INTENTIONALLY FAILED TO DISCLOSE THE PERIPHONICS PRIOR ART

160.    Upon information and belief, Katz intentionally withheld from the USPTO highly

relevant and material prior art by the Periphonics Corporation ("Periphonics") in

order to obtain claims to which Mr. Katz was not entitled.  Upon information and

belief, in April 1993, in connection with the West case, materials bearing Bates

numbers W72807-W73756 ("the West materials") were provided to Harold Wurst,

Esq. of Nilsson, Wurst & Green ("the Nilsson firm").  The Nilsson firm was involved

in prosecuting many of Mr. Katz's patent applications, some of which would

ultimately issue as the asserted patents.

161.    Upon information and belief, in U.S. Patent Application No. 08/306,456, which

issued as the '965 patent, Katz stated: "During litigation [the West case], a

voluminous quantity of prior art, that is, some 500 items (including single or plural

related documents grouped together), were identified by the defendant.  During

pretrial procedures, however, the defendant distilled the applied art to 59 separate

items (including single or plural related documents)."  Paper no. 3, filed November 4,

1994.  Katz also stated: "The voluminous quantity of art identified during litigation,

excluding the 59 items (Set I), is listed on the second set of forms PTO-1449

(Supplemental I)."  *Id.*

162.    Upon information and belief, Katz made the similar statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).  Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent.  These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

163.    Upon information and belief, in connection with making these statements and references during prosecution of the '707, '965, '285, '863, and '551 patents, Katz submitted to the USPTO certain materials containing Bates numbers within the range of the West materials.  In addition to those submitted, the original West materials further included a number of Periphonics references, including: (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095); and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and User Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

164.    Upon information and belief, the Bank-From-Home reference and the VoicePac
reference are highly relevant to many claims of the asserted patents. The Bank-From-
Home reference describes such limitations of claims of the asserted patents as
structures for interfacing, storing, qualifying, switching, processing, voice generation,
verifying credit and designating, as related to callers to the disclosed system. The
VoicePac reference describes such limitations of claims of asserted patents as
interfacing callers to the system and transferring callers to a customer service
representative.

165.    Upon information and belief, while other references containing Bates numbers within
the range of the West materials were submitted to the Patent and Trademark Office
during prosecution of the '707, '965, '285, '863 and '551 patents, the Bank-From-
Home and VoicePac references were knowingly withheld during prosecution of at
least these patents with knowledge of their materiality. Katz's failure to disclose this
material prior art was a violation of the duty of candor and good faith owed to the
USPTO, and constitutes inequitable conduct. Thus, at least the '707, '965, '285,
'863, and '551 patents, which are included in the asserted patents, are rendered
unenforceable due to the inequitable conduct that occurred during prosecution of their
respective applications.

166.    Others of the asserted patents are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability. For example, upon information and belief, the '065 and '360 patents have specifications substantially identical to those of the '707, '863, and '551 patents, and rely for priority on the '739 patent, also having a substantially identical specification. The '065 and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '863, '551, and '739 patents. In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

167.    Thus, Katz's inequitable conduct renders each of the '707, '965, '285, '863, '551, '065, and '360 patents unenforceable in its entirety.

### Katz Intentionally Failed to Inform the USPTO of Inconsistent Positions Taken During Prosecution

### KATZ FAILED TO INFORM THE USPTO OF INCONSISTENT POSITIONS TAKEN WITH RESPECT TO THE DAUDELIN PATENTS

168.    Upon information and belief, at least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of the asserted patents and related patents. Upon information and belief, the specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

169. Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the asserted patents and failed to inform the different patent examiners of Katz's inconsistent positions.

170. During prosecution of the '734 patent, Katz labeled various prior art references as either "D," "A," or "D/A" so as to indicate whether or not the reference was "pertinent to DNIS capabilities," "pertinent to ANI capabilities," or both, respectively. During the prosecution of the '734 patent, Katz did not label the Daudelin '910 patent as either "D," "A," or "D/A." By failing to label the Daudelin '910 patent as either "D," "A," or "D/A", Katz, thereby, characterized the Daudelin '910 patent as not being pertinent to either DNIS or ANI capabilities.

171. Whereas, as part of the prosecution of the '551 patent, Katz took a position that was contrary to the position Katz took as part of the prosecution of the '734 patent. Specifically, as part of the prosecution of the '551 patent, Katz labeled the Daudelin '910 patent with a "D." Katz, therefore, took the position, part of the prosecution of the '551 patent, that the Daudelin '910 patent was pertinent to DNIS capabilities.

172. Subsequently, however, as part of the prosecution of the '360 patent, Katz took a position that was contrary to that taken as part of the prosecution of the '551 patent. Specifically, as part of the prosecution of the '360 patent, Katz asserted that "… Daudelin does not teach DNIS…."

173. Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to

deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734 and '360 patents, which are included in the asserted patents, unenforceable.

174.    At least, the '120, '065, and '223 patents all claim priority to one or more of the '551, '734, and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material.  Accordingly, at least the '120, '065, and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, and '360 patents.

175.    Accordingly, at least the '551, '734, '120, '223 and '360 patents are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

## KATZ FAILED TO INFORM THE USPTO OF INCONSISTENT POSITIONS TAKEN WITH RESPECT TO THE RISKIN PATENT

176.    Upon information and belief, Katz failed to inform the USPTO of inconsistent positions taken with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

177.    As part of the prosecution of the '075 patent, Katz stated "... that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing ...."

178.    As part of the prosecution of the '120 patent, Katz took a position that was contrary to the position that Katz took as part of the prosecution of the '075 patent.  Specifically,

as part of the prosecution of the '120 patent, Katz labeled the Riskin patent with an "A," and not with a "D" or "D/A." By labeling the Riskin patent with an "A" only, Katz characterized the Riskin patent to the patent examiner as disclosing aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

179. By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

180. At least the '703 and '223 patents, which are included in the asserted patents, each claim priority to at least either the '075 or '120 patents and claim subject matter related to these patents to which the Riskin patent is material. Accordingly, at least the '703 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

181. Accordingly, at least the '120 and '223 patents are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

**Katz Intentionally Failed to Identify or Disclose Material Information From Related Litigations or Proceedings**

182.   Pursuant to the M.P.E.P., including § 2001.01 and § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the USPTO has a duty to bring to the attention of the USPTO "the existence of such litigation and any other material information arising therefrom."

183.   Upon information and belief, as set forth below, as part of the prosecution of several of the asserted patents, Katz failed to identify or disclose to the patent examiners material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the asserted patents, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

## KATZ FAILED TO DISCLOSE THE *WEST INTERACTIVE CORP. V. FIRST DATA RESOURCES, INC* LITIGATION

184.   Upon information and belief, on October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska.  West alleged, *inter alia*, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent) are invalid on several theories including prior use and prior art.

185.   West's allegations in that suit are material to at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

186.    Upon information and belief, during the prosecution of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

187.    Nonetheless, upon information and belief, Katz did not explicitly disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation to the examiners of the '984, '252, '309, '285, '863, '551, '734, '762, '893, '120, '965, '703, '223, and '360 patents as part of prosecution of these patents.  Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of West's allegations relating to the invalidity and unenforceability of the '739 and '150 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

## KATZ FAILED TO DISCLOSE THE *FIRST DATA RESOURCES, INC. V. 900 MILLION, INC ET AL.* LITIGATION

188.    Upon information and belief, on October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150, and '773 patents.

189.  Upon information and belief, the defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150, and '773 patents.

190.  Upon information and belief, the defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '984, '252, '309, '285, 707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents, all of which claim priority to at least the '739 patent.

191.  Upon information and belief, during the prosecution of the '984, '252, '309, '285, 707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

192.  Nonetheless, upon information and belief, Katz did not explicitly disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation to the examiners of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents as part of prosecution of these patents.  Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150, and '773 patents as set forth in the pleadings and other papers arising in the litigation.  Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

KATZ FAILED TO DISCLOSE THE *FIRST DATA RESOURCES INC. V. WEST INTERACTIVE CORP ET AL.* LITIGATION

193. Upon information and belief, on August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

194. Upon information and belief, the defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, *inter alia*, the invalidity and unenforceability of the '739, '298, and '150 patents.

195. The defendants' allegations in that suit are material to at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents, all of which claim priority to at least the '739 patent.

196. Upon information and belief, during the prosecution of these asserted patents, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

197. Nonetheless, upon information and belief, as part of the prosecution of at least the '984, '863, '551, '734 and '120 patents, which are part of the asserted patents, Katz did not disclose the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after payment of the issue fee) to the examiners of the '309, '984, '863, '551, '734 and '120 patents as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of the defendants' allegations relating to the invalidity and

unenforceability of the '739, '150, and '298 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

## KATZ FAILED TO DISCLOSE THE *RONALD A. KATZ TECH. LICENSING, L.P. V. MICRO VOICE APPLICATIONS, INC. AT AL.* LITIGATION

198. Upon information and belief, on February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '309, '285, '707, '863, and '734 patents.

199. In response to RAKTL's Complaint, the defendants in the *Ronald A. Katz Tech. Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia*, that the '739, '153, '252, '309, '285, '707, '863 and '734 patents are invalid and/or unenforceable.

200. The defendant's allegations in the *Ronald A. Katz Tech. Licensing, L. P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '065 and '965 patents, which are related patents to the patents at issue in that suit.

201. Upon information and belief, during the prosecution of the '065 and '965 patents, Katz was aware of the *Ronald A. Katz Tech. Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

202. Nonetheless, upon information and belief, as part of the prosecution of at least the '065 and '965 patents, Katz did not disclose the existence of the *Ronald A. Katz Tech.*

*Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation to the examiners of

the '065 and '965 patents as part of prosecution of these patents. Moreover, upon

information and belief, Katz did not disclose to the examiners of these patents the

nature of the defendants' allegations relating to the invalidity and unenforceability of

the '739, '153, '252, '309, '285, '707, '863, and '734 patents as set forth in the

pleadings and other papers arising in the litigation. Upon information and belief, this

failure was committed with the intent to deceive the USPTO into issuing patent

claims of a scope beyond which Katz was entitled, thereby committing inequitable

conduct and rendering these patents unenforceable.

## KATZ FAILED TO DISCLOSE THE *RONALD A. KATZ TECH. LICENSING, L.P. ET AL. V. AT&T CORP. ET AL.* LITIGATION

203.    Upon information and belief, on July 8, 1997, RAKTL and MCI Telecommunications

Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in

the United States District Court for the Eastern District of Pennsylvania for

infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '707,

'645, '120, and '863 patents.

204.    In reply, AT&T Corp. asserted, inter alia, that the '739, '150, '298, '075, '929, '984,

'153, '252, '309, '285, '707, '645, '120, and '863 patents are invalid.

205.    AT&T Corp.'s allegations in the *Ronald A. Katz Tech. Licensing, L.P. v. AT&T*

*Corp., et al.* litigation are material to at least the '120 patent, which is related to and

claims related subject matter to the patents involved in that litigation.

206.    Upon information and belief, during the prosecution of the '120 patent, Katz was

aware of the *Ronald A. Katz Tech. Licensing, L.P. v. AT&T Corp., et al.* litigation and

of material information arising therefrom, as set forth in the pleadings and other
papers arising therein.

207.    Nonetheless, upon information and belief, Katz did not disclose the existence of the
*Ronald A. Katz Tech. Licensing, L.P. v. AT&T Corp., et al.* litigation to the examiners
of the '120 patent as part of prosecution of this patent. Moreover, upon information
and belief, Katz did not disclose to the examiners of these patents the nature of
AT&T's allegations relating to the invalidity of the '739, '150, '298, '075, '929, '984,
'153, '309, '285, '707, '645, '120, and '863 patents as set forth in the pleadings and
other papers arising in the litigation. Upon information and belief, this failure to
disclose was committed with the intent to deceive the USPTO into issuing patent
claims of a scope beyond which Katz was entitled, thereby committing inequitable
conduct and rendering these patents unenforceable.

KATZ FAILED TO DISCLOSE PATENT INTERFERENCE NO. 103,697

208.    Upon information and belief, Patent Interference No. 103,697 was declared on
February 13, 1996, and was finalized by November 20, 1996. As part of that
interference, the Board of Patent Appeals and Interferences ("BPAI") found that
claims of at least some of the counts of Patent Interference No. 103,697 were not
entitled to the benefit of the filing date of the '968 patent.

209.    The BPAI's conclusion that the '968 patent lacked written support for certain alleged
limitations would have been material to the patent examiners of the '863, '965, '734
and '120 patents, for purposes of, for example, establishing the effective date of a
claim for purposes of analyzing prior art. Indeed, upon information and belief, all of
the '863, '965, '734 and '120 patents claim priority to the '968 patent, and many of

them, including at least the '863 and the '551 patents, are disclaimed with respect to the '968 patent.

210.   Nonetheless, upon information and belief, Katz failed to bring the existence of Patent Interference No. 103,697 to the attention of the patent examiners of at least the '863, '965, '734, and '120 patents.  Moreover, upon information and belief, Katz failed to bring to the attention of the patent examiners of at least the '863, '156, '965, '734

211.   and '120 patents the BPAI's findings, i.e., that claims of at least some of the counts of Patent Interference No. 103,697 were not entitled to the benefit of the filing date of the '968 patent.

212.   Upon information and belief, these failures to disclose were committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '863, '965, '734 and '120 patents unenforceable.

**Katz intentionally failed to Inform Patent Examiners of Adverse Findings by Others**

213.   The M.P.E.P. § 2001.06(b) states that each individual associated with the filing and prosecution of a patent application before the USPTO has "a duty to bring to the attention of the examiner, or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question."  Furthermore, according to this section of the M.P.E.P., such individuals:

cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner. For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct

claims are present that fact must be disclosed to the examiner of each of the involved applications.

### KATZ FAILED TO DISCLOSE ADVERSE FINDINGS IN RELATED PATENT PROSECUTIONS

214. During the prosecution of the '344 patent, Katz made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party identification number." Further, upon information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

215. The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968...." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent. Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means....' "

216.    Despite Examiner Brown's refutation of Katz's assertions that the '344 patent
        application was a continuation of the '968 patent and that the '968 patent supported
        the automatic number identification (ANI) decoder means limitation, in the
        subsequent Patent Interference No. 103,697, Katz claimed support for "means
        connected to said interface switching means for directly providing a caller telephone
        number from said telephone facility" in the '968 patent.

217.    Further, upon information and belief, during the Patent Interference No. 103,697,
        Katz did not inform the Board of Patent Appeals and Interferences of Examiner
        Brown's prior repudiation of Katz's assertion Katz's assertion that the '968 patent
        supported the automatic number identification (ANI) decoder means limitation.  Katz
        did not inform the Board of Patent Appeals and Interferences of at least Examiner
        Brown's prior statement "that applicant's patent [i.e., the '968 patent] does not in fact
        disclose or describe an 'automatic number identification (ANI) decoder means....'"

218.    Examiner Brown's prior repudiation of Katz's assertion would have also been
        material to the Board of Patent Appeals and Interferences' determination as to
        whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the
        Szlam patent"), particularly in as much, as the Board ultimately concluded that Count
        1, which was alleged by Katz to have support in the '968 patent, was found lacking
        by the Board.  Count 1 recited, in part, "means connected to said interface switching
        means for directly providing a caller telephone number from said telephone facility"
        and "computer means ...responsive to said caller telephone number ..."

219.    Upon information and belief, Katz intentionally failed to inform the Board of Patent
        Appeals and Interferences of the prior repudiations of Katz's assertions that certain

claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

220.  Likewise, upon information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before ...Szlam."

221.  Upon information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means."

222.  Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

223.  Upon information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 patent unenforceable.

224.  Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe

how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for 'person-to-person' interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

225.  Upon information an belief, Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured into the '065 patent, and again, in another subsequently file application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

226.  Upon information and belief, Katz failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification. Upon information and belief, Katz's failure to disclose to Examiner Weaver the finding of Examiner Brown regarding a lack of written support was in violation of Katz's duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '551, '360, and '065 patents, which are part of the asserted patents, unenforceable.

KATZ FAILED TO DISCLOSE ADVERSE FINDINGS FROM APPEAL RULINGS

227.  Upon information and belief, Katz failed to inform the patent examiners of certain of the asserted patents of the existence and outcome of certain Appeal Rulings of related patents. At least some of the Appeal rulings upheld rejections made by the relevant patent examiner, which were, in some instances, adverse or contrary to positions Katz took during the prosecution of one or more of the asserted patents.

228.  For example, upon information and belief, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger

patent, which is prior art to the asserted patents, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

229.     The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '120, '065 and '965 patents with respect to any claims reciting a multiple format limitation.

230.     Nonetheless, upon information and belief, Katz failed to inform the examiners of at least the '734, '120, '065, and '965 patents of the Board of Patent Appeals and Interferences' finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

231.     Upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '734, '120, '065 and '965 patents unenforceable.

232.     The inequitable conduct committed by Katz with respect to the '734, '120, '065 and '965 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material, thereby rendering these related patents, including at least the '223 and '360 patents unenforceable.

**Katz Intentionally Made False Claims of Priority so as to Avoid the Prior Art**

233.   Upon information and belief, during the prosecution of several of the asserted patents, Katz made false claims of priority to earlier applications with the intent to avoid prior art, as set forth below.

234.   For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], *i.e.*, the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for certain claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

235.   Likewise, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,792,461 to Brown ("the Brown patent") to the USPTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12. Contrary to Katz's assertion, however, certain of the pending application's claims, which were directed to multiple call modes, were not entitled to the priority date of the '150 patent because there is no support in the in the '150 patent for multiple call modes as recited by the claims of the '734 patent. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

236.    Similarly, upon information and belief, during prosecution of the '734 patent, Katz made a false claim to priority in an attempt to antedate a prior art reference by Hester. Katz stated "the reference by Hester bears a date of 1985, apparently 'September.' In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." The parent application Katz referenced, however, does not disclose toll free calls or 900 "pay-per-call" modes. Therefore, none the claims in the '734 patent reciting limitations directed to toll free calls or 900 "pay-per-call" modes are entitled to claim priority to that parent application's July 10, 1985 filing date. Therefore, upon information and belief, during the prosecution of the '734 patent, Katz intentionally misrepresented the priority dates for such claims reciting limitations directed to toll free calls or 900 "pay-per-call" modes in order to antedate the Hester reference.

237.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz mischaracterized Katz's pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference." Katz's statement, upon information and belief, was false at the time it was made. Upon information and belief, at the time Katz made this statement there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter that was not supported by the earlier filed application, and were, therefore, not entitled to an earlier priority date. Therefore, upon information and belief, Katz intentionally misrepresented the

priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

238.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

239.    In addition, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints other related patents, including the '252, '120 and '223 patents, which claim priority to these patents and which claim related subject matter to which the prior art patents are material, rendering these related patents unenforceable.

## Conclusion

240.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the asserted patents and/or other related patents that infected, either directly or indirectly, all of the asserted patents, thereby rendering them unenforceable for inequitable conduct.

241.    CVS is, therefore, entitled to a judicial declaration that each of the asserted patents is unenforceable.

## CLAIM I

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '968 PATENT

242.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-241.

243.   RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '968 patent by RAKTL.

244.   Upon information and belief, the claims of the '968 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

245.   CVS does not infringe any valid claim of the '968 patent.

246.   An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '968 patent.

**CLAIM II**

**CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '150 PATENT**

247.   CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-246.

248.   RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '150 patent by RAKTL.

249.   Upon information and belief, the claims of the '150 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

250.   CVS does not infringe any valid claim of the '150 patent.

251.   An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '150 patent.

252.   The '150 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM III

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '984 PATENT

253. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-252.

254. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '984 patent by RAKTL.

255. Upon information and belief, the claims of the '984 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

256. CVS does not infringe any valid claim of the '984 patent.

257. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '984 patent.

258. The '984 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM IV

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '252 PATENT

259. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-258.

260. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '252 patent by RAKTL.

261. Upon information and belief, the claims of the '252 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

262.    CVS does not infringe any valid claim of the '252 patent.

263.    An actual and justiciable controversy exists between CVS and RAKTL regarding

invalidity and noninfringement of the '252 patent.

264.    The '252 patent is unenforceable due to inequitable conduct committed by Katz

and/or Katz's representatives as described herein.

## CLAIM V

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '309 PATENT

265.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-

264.

266.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued

for the infringement of the '309 patent by RAKTL.

267.    Upon information and belief, the claims of the '309 patent are invalid for failure to

meet the requirements for patentability, including one or more sections of 35 U.S.C.

§§ 101, 102, 103, and 112.

268.    CVS does not infringe any valid claim of the '309 patent.

269.    An actual and justiciable controversy exists between CVS and RAKTL regarding

invalidity and noninfringement of the '309 patent.

270.    The '309 patent is unenforceable due to inequitable conduct committed by Katz

and/or Katz's representatives as described herein.

## CLAIM VI

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '285 PATENT

271.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-

270.

272. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '285 patent by RAKTL.

273. Upon information and belief, the claims of the '285 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

274. CVS does not infringe any valid claim of the '285 patent.

275. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '285 patent.

276. The '285 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM VII

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '707 PATENT

277. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-276.

278. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '707 patent by RAKTL.

279. Upon information and belief, the claims of the '707 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

280. CVS does not infringe any valid claim of the '707 patent.

281. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '707 patent.

282.  The '707 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as herein.

## CLAIM VIII

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '863 PATENT

283.  CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-282.

284.  RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '863 patent by RAKTL.

285.  Upon information and belief, the claims of the '863 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

286.  CVS does not infringe any valid claim of the '863 patent.

287.  An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '863 patent.

288.  The '863 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM IX

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '551 PATENT

289.  CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-288.

290.  RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '551 patent by RAKTL.

291.  Upon information and belief, the claims of the '551 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

292.  CVS does not infringe any valid claim of the '551 patent.

293.  An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '551 patent.

294.  The '551 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM X

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '734 PATENT

295.  CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-294.

296.  RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '734 patent by RAKTL.

297.  Upon information and belief, the claims of the '734 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

298.  CVS does not infringe any valid claim of the '734 patent.

299.  An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '734 patent.

300.  The '734 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM XI

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '762 PATENT

301. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-300.

302. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '762 patent by RAKTL.

303. Upon information and belief, the claims of the '762 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

304. CVS does not infringe any valid claim of the '762 patent.

305. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '762 patent.

306. The '762 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM XII

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '893 PATENT

307. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-306.

308. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '893 patent by RAKTL.

309. Upon information and belief, the claims of the '893 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

310.    .CVS does not infringe any valid claim of the '893 patent.

311.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '893 patent.

312.    The '893 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM XIII

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '120 PATENT

313.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-312.

314.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '120 patent by RAKTL.

315.    Upon information and belief, the claims of the '120 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

316.    CVS does not infringe any valid claim of the '120 patent.

317.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '120 patent.

318.    The '120 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM XIV

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '021 PATENT

319.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-318.

320.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '021 patent by RAKTL.

321.    Upon information and belief, the claims of the '021 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

322.    CVS does not infringe any valid claim of the '021 patent.

323.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '021 patent.

324.    The '021 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM XV

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '065 PATENT

325.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-324.

326.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '065 patent by RAKTL.

327.    Upon information and belief, the claims of the '065 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

328.    CVS does not infringe any valid claim of the '065 patent.

329.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '065 patent.

330. The '065 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM XVI

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '965 PATENT

331. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-330.

332. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '965 patent by RAKTL.

333. Upon information and belief, the claims of the '965 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

334. CVS does not infringe any valid claim of the '965 patent.

335. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '965 patent.

336. The '965 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM XVII

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '703 PATENT

337. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-336.

338. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '703 patent by RAKTL.

339. Upon information and belief, the claims of the '703 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

340. CVS does not infringe any valid claim of the '703 patent.

341. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '703 patent.

342. The '703 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## CLAIM XVIII

## CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '223 PATENT

343. CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-342.

344. RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '223 patent by RAKTL.

345. Upon information and belief, the claims of the '223 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

346. CVS does not infringe any valid claim of the '223 patent.

347. An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '223 patent.

348. The '223 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

**CLAIM IX**

**CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '415 PATENT**

349.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-348.

350.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '415 patent by RAKTL.

351.    Upon information and belief, the claims of the '415 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

352.    CVS does not infringe any valid claim of the '415 patent.

353.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '415 patent.

354.    The '415 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

**CLAIM XX**

**CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '360 PATENT**

355.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-354.

356.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '360 patent by RAKTL.

357.    Upon information and belief, the claims of the '360 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

358.    CVS does not infringe any valid claim of the '360 patent.

359.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '360 patent.

360.    The '360 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM XXI

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '156 PATENT

361.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-360.

362.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '156 patent by RAKTL.

363.    Upon information and belief, the claims of the '156 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

364.    CVS does not infringe any valid claim of the '156 patent.

365.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '156 patent.

366.    The '156 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

### CLAIM XXII

### CVS DOES NOT INFRINGE ANY VALID, ENFORCEABLE CLAIM OF THE '134 PATENT

367.    CVS realleges and incorporates by reference the allegations set forth in paragraphs 1-354.

368.    RAKTL's actions have placed CVS in reasonable apprehension that it will be sued for the infringement of the '134 patent by RAKTL.

369.    Upon information and belief, the claims of the '134 patent are invalid for failure to meet the requirements for patentability, including one or more sections of 35 U.S.C. §§ 101, 102, 103, and 112.

370.    CVS does not infringe any valid claim of the '134 patent.

371.    An actual and justiciable controversy exists between CVS and RAKTL regarding invalidity and noninfringement of the '134 patent.

372.    The '134 patent is unenforceable due to inequitable conduct committed by Katz and/or Katz's representatives as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment in its favor that:

(a)    each and every claim of U.S. Patent No. '968 is invalid, unenforceable, and/or not infringed by CVS;

(b)    each and every claim of U.S. Patent No. '150 is invalid, unenforceable, and/or not infringed by CVS;

(c)    each and every claim of U.S. Patent No. '984 is invalid, unenforceable, and/or not infringed by CVS;

(d)    each and every claim of U.S. Patent No. '252 is invalid, unenforceable, and/or not infringed by CVS;

(e)    each and every claim of U.S. Patent No. '309 is invalid, unenforceable, and/or not infringed by CVS;

(f)    each and every claim of U.S. Patent No. '285 is invalid, unenforceable, and/or not infringed by CVS;

(g)    each and every claim of U.S. Patent No. '707 is invalid, unenforceable, and/or not infringed by CVS;

(h)    each and every claim of U.S. Patent No. '863 is invalid, unenforceable, and/or not infringed by CVS;

(i)    each and every claim of U.S. Patent No. '551 is invalid, unenforceable, and/or not infringed by CVS;

(j)    each and every claim of U.S. Patent No. '734 is invalid, unenforceable, and/or not infringed by CVS;

(k)    each and every claim of U.S. Patent No. '762 is invalid, unenforceable, and/or not infringed by CVS;

(l)    each and every claim of U.S. Patent No. '893 is invalid, unenforceable, and/or not infringed by CVS;

(m)    each and every claim of U.S. Patent No. '120 is invalid, unenforceable, and/or not infringed by CVS;

(n)    each and every claim of U.S. Patent No. '021 is invalid, unenforceable, and/or not infringed by CVS;

(o)    each and every claim of U.S. Patent No. '065 is invalid, unenforceable, and/or not infringed by CVS;

(p)    each and every claim of U.S. Patent No. '965 is invalid, unenforceable, and/or not infringed by CVS;

(q)    each and every claim of U.S. Patent No. '703 is invalid, unenforceable, and/or not infringed by CVS;

(r)    each and every claim of U.S. Patent No. '223 is invalid, unenforceable, and/or not infringed by CVS;

(s)    each and every claim of U.S. Patent No. '415 is invalid, unenforceable, and/or not infringed by CVS;

(t)    each and every claim of U.S. Patent No. '360 is invalid, unenforceable, and/or not infringed by CVS;

(u)    each and every claim of U.S. Patent No. '156 is invalid, unenforceable, and/or not infringed by CVS;

(v)    each and every claim of U.S. Patent No. '134 is invalid, unenforceable, and/or not infringed by CVS;

(w)    Defendant and its officers, agents, employees, representatives, counsel, and all persons in active concert or participation with any of them, directly or indirectly, be enjoined from threatening or charging infringement of, or instituting any action for infringement of any of the asserted patents;

(x)    Defendants pay to Plaintiff the costs and reasonable attorneys' fees incurred by Plaintiff in this action; and

(y)    Plaintiff be granted such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

OF COUNSEL:
A. Jason Mirabito
Mike T. Renaud
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Sean T. O'Kelly (#4349)
Kristen Healey Cramer (#4512)
Cross & Simon
913 North Market St.
11th Floor
Wilmington, DE 19801
(302) 777-4200

ATTORNEYS FOR PLAINTIFF CVS
CORPORATION

Date:   December 19, 2006

JS 44 (REV. 07/89)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**CVS CORPORATION**

**DEFENDANTS**

**RONALD A. KATZ TECHNOLOGY LICENSING, L.P.**

(b) County of residence of first listed plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County Of Residence Of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

(c) Attorneys (Firm Name, Address, and Telephone Number)

Sean T. O'Kelly (#4349)
Kristen Healey Cramer (#4512)
Cross & Simon, LLC
913 North Market Street, 11th Floor
Wilmington, DE 19801
(302) 777-4200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1.  U.S. Government Plaintiff

☑ 3.  Federal Question
(U.S. Government Not a Party)

☐ 2.  U.S. Government Defendant

☐ 4.  Diversity
(Indicates Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This Sate | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury- Med Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer.w/Disabilities- Employment
☐ 446 Amer.w/Disabilities- Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 501 Motions to Vacate Sentence Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

### OTHER STATUES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influence and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commod ities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statues

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statue under which you are filing (Do not cite jurisdictional statues unless diversity):
35 U.S.C. §§ et seq.
Brief description of cause:
Action under patent laws for declaratory judgment

## VII. REQUEST IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demand in complaint:
JURY DEMAND: ☑ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE: Gregory M. Sleet    DOCKET NUMBER: 06-545

DATE
12/19/06

SIGNATURE OF ATTORNEY OF RECORD
*Sean T. O'Kelly*

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. <u>0 6 - 7 7 5</u>

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

DEC 1 9 2006
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Nicole Kelly
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action