IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CVS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-00775 GMS |
| | ) | |
| RONALD A. KATZ TECHNOLOGY | ) | |
| LICENSING, L.P. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

### RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S ANSWER AND COUNTERCLAIMS TO CVS CORPORATION'S COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY, NONINFRINGEMENT, AND UNENFORCEABILITY

Defendant Ronald A. Katz Technology Licensing, L.P. ("Katz Technology Licensing") hereby sets forth its Answer and Counterclaims to the Complaint for Declaratory Judgment of Patent Invalidity, Noninfringement and Unenforceability filed by plaintiff CVS Corporation ("CVS") as follows:

### THE PARTIES

1.     Upon information and belief, Katz Technology Licensing admits that CVS is a Delaware corporation with its offices at One CVS Drive, Woonsocket, Rhode Island 02895, as alleged in Paragraph 1.

2.     Katz Technology Licensing admits that it is a limited partnership organized under the laws of the State of California with principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

### JURISDICTION AND VENUE

3.     Katz Technology Licensing admits that this action arises under 35 U.S.C. § 1, *et seq.*

4.     Katz Technology Licensing: (a) admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); (b) admits that CVS purports to bring its counterclaims for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 as alleged in Paragraph 4; and (c) denies the viability of plaintiff's request for declaratory judgment.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 4.

5.     Katz Technology Licensing admits that this Court has personal jurisdiction over Katz Technology Licensing in this action.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 5.

6.     Katz Technology Licensing denies the allegations set forth in Paragraph 6.

7.     Katz Technology Licensing admits that it has sued multiple defendants in five lawsuits filed in the District of Delaware on September 1, 2006.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 7.

8.     Katz Technology Licensing denies the allegations set forth in Paragraph 8.

9.     Katz Technology Licensing admits that certain companies that have entered into licenses with Katz Technology Licensing or A2D, L.P. are Delaware corporations. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 9.

10.     Katz Technology Licensing admits that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

11.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 11 and on that basis denies the allegations in that paragraph.

12.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 12 and on that basis denies the allegations in that paragraph.

13.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 13 and on that basis denies the allegations in that paragraph.

14.    Katz Technology Licensing admits that its licensing arm, A2D, L.P., offered CVS a license under the Katz Technology Licensing patent portfolio. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 14.

15.    Katz Technology Licensing admits that it is the sole holder of the entire right, title, and interest in the '021, '065, '120, '134, '150, '156, '223, '252, '285, '309, '360, '415, '551, '703, '707, '734, '762, '863, '893, '965, '968, and '984 patents (collectively "patents-in-suit").

16.    Katz Technology Licensing admits that it has initiated litigation against companies other than CVS in which Katz Technology has alleged infringement of patents in the Katx Technology Licensing patent portfolio, including one or more of the patents-in-suit, in connection with call processing systems operated by or for those other companies. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 16.

17.    Katz Technology Licensing admits it filed multiple lawsuits in 2005 and 2006 in the Eastern District of Texas and the District of Delaware against companies other than CVS, that certain of those lawsuits were subsequently split into separate actions, and that certain of those actions are listed in Paragraph 17.

18.    Katz Technology Licensing admits that in the actions listed in Paragraph 17 Katz Technology Licensing has alleged that defendants have infringed and/or are infringing one or more of the patents asserted in those actions. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 18.

19.    Katz Technology Licensing admits that it has alleged in its complaint filed in *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.*, Case No. 1:06-CV-00545-GMS, that defendants, including Eckerd Corporation, have infringed and/or are infringing one or more of the patents asserted in that action. Katz Technology Licensing lacks information or belief to answer the remaining allegations in Paragraph 19 and on that basis denies those allegations.

20.    Katz Technology Licensing admits that it has asserted that Eckerd Corporation has infringed and/or is infringing the '021, '065, '120, '150, '223, '252, '285, '309,

'360, '415, '551, '703, '707, '734, '762, '863, '893, '965, '968, and '984 patents in the action captioned *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.,* Case No. 1:06-CV-00545-GMS.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 20.

21.     Katz Technology Licensing admits that A2D, L.P is the licensing arm of Katz Technology Licensing.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 21.

22.     Katz Technology Licensing admits that attorneys representing A2D, L.P. have engaged in written and oral communications with representatives of CVS.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 22.

## RAKTL'S Communications With CVS

### 2002 LETTER SENT TO CVS

23.     Katz Technology Licensing admits that its attorneys sent a letter to CVS offering a license under Katz Technology Licensing's patent portfolio on September 3, 2002 ("the 2002 letter").   Katz Technology Licensing denies any remaining allegations set forth in Paragraph 23.

24.     Katz Technology Licensing admits that the 2002 letter stated:  "Claims that have been of interest to other companies in the health services field include:  [certain claims of the '309, '707, '156 and '551 patents]."  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 24.

25.     Katz Technology Licensing admits that the 2002 letter to CVS stated: "The breadth and scope of the claims in the portfolio were demonstrated in an infringement lawsuit brought by RAKTL in the United States District Court for the District of Eastern Pennsylvania. . . .  The case settled in November 2000 with the defendant agreeing to purchase a license under the RAKTL patent portfolio."  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 25

## 2003 PRESENTATION SHOWN TO CVS

26.    Katz Technology Licensing admits that its attorneys met with CVS representatives on April 29, 2003.  Katz Technology Licensing further admits that during that meeting its attorneys used a PowerPoint presentation to provide information about Katz Technology Licensing's patent portfolio ("the 2003 presentation").   Katz Technology Licensing denies any remaining allegations set forth in Paragraph 26.

27.    Katz Technology Licensing admits that the 2003 presentation included a section entitled, "Examples of How CVS Corporation Uses RAKTL's Patented Technology." Katz Technology Licensing further admits that the 2003 presentation included examples based upon selected claims of the '156, '223, '551 and '707 patents.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 27.

28.    Katz Technology Licensing admits that the 2003 presentation included a section entitled, "Examples of How CVS Corporation Uses RAKTL's Patented Technology." Katz Technology Licensing further admits that the 2003 presentation included comparisons of certain claims from the '156, '223, '551 and '707 patents to the CVS Pharmacy Rapid Refill Prescription Service and other CVS systems.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 28.

29.    Katz Technology Licensing admits that the 2003 presentation stated that "RAKTL And Its Licensing Arm, A2D, L.P., Have Been Successful In:  Developing and Patenting Key Technologies . . . Licensing Its Patents . . . Litigating, When Necessary, to Protect its Patent Rights."  Katz Technology Licensing further admits that the 2003 presentation stated: "The Patents Have Been In Litigation Seven Times" and that "Two Cases Are Currently Pending."  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 29.

## CVS' MEETINGS WITH KATZ'S ATTORNEYS

30.    Katz Technology Licensing admits that its attorneys met with CVS representatives on or about January 22, 2004 ("the 2004 meeting").

5

31.     Katz Technology Licensing admits that representatives of CVS and attorneys for Katz Technology Licensing engaged in a telephone conversation in January 2005 ("the January 2005 call").

32.     Katz Technology Licensing admits that representatives of CVS and attorneys for Katz Technology Licensing engaged in a telephone conversation in June 2005 (referred to by CVS as "the July 2005 call").

33.     Katz Technology Licensing admits that its attorneys met with CVS representatives on or about December 5, 2005 ("the 2005 meeting").

34.     Katz Technology Licensing admits that its attorneys met with CVS representatives on or about July 17, 2006 ("the 2006 meeting").

35.     Katz Technology Licensing admits that its attorneys have communicated with CVS representatives about Katz Technology Licensing's willingness to offer CVS a license under Katz Technology Licensing's patent portfolio and the need for such a license. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 35.

36.     Katz Technology Licensing admits that its attorneys have communicated with CVS representatives about Katz Technology Licensing's willingness to offer CVS a license under Katz Technology Licensing's patent portfolio and the need for such a license. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 36.

37.     Katz Technology Licensing admits that its attorneys have communicated with CVS representatives about Katz Technology Licensing's willingness to offer CVS a license under Katz Technology Licensing's patent portfolio and the need for such a license. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 37.

38.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 38, and on that basis denies the allegations in that paragraph.

39.     Katz Technology Licensing admits that its attorneys have communicated with CVS representatives subsequent to the 2006 meeting. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 39.

40.     Katz Technology Licensing admits that (a) its attorneys have communicated with a group of companies, including certain companies that offer pharmacy and prescription services, about those companies taking a license under Katz Technology Licensing's patent portfolio; and (b) CVS participated in a meeting between Katz Technology Licensing and that group of companies.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 40.

41.     Katz Technology Licensing admits that in early 2006, CVS participated with a group of companies ("the negotiating group") that were negotiating a license agreement with Katz Technology Licensing.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 41.

42.     Katz Technology Licensing admits that its attorneys met with legal representatives of CVS on or about November 30, 2006.  Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 42 relating to CVS's understanding of the "tenor" of the meeting and on that basis denies them.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 42.

43.     Katz Technology Licensing admits that on or about October 10, 2006, CVS participated in a meeting with the negotiating group and Katz Technology Licensing.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 43.

44.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 44 and on that basis denies them.

45.     Katz Technology Licensing admits that on September 1, 2006, it filed a complaint against Ahold U.S.A., Inc., The Stop & Shop Supermarket Company LLC, Giant Food Stores, LLC, Giant Food LLC, Giant Food Inc. and Express Scripts, Inc. in the District of Delaware in *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.,* Case No. 1:06-CV-00545-GMS.  Katz Technology Licensing further admits that it amended its complaint on October 25, 2006 to, among other things, add as defendants Rite Aid Corporation, Rite Aid of Delaware, Inc., The Jean Coutu Group (PJC) USA, Inc., Eckerd Corporation, Brooks Pharmacy,

Inc., Maxi Drug, Inc. and Maxi Drug North, Inc.   Katz Technology Licensing denies any remaining allegations in Paragraph 45.

46.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 46 and on that basis denies them.

47.    Katz Technology Licensing lacks information or belief to answer the allegations in the first sentence of Paragraph 47, and on that basis denies the allegations in that sentence.  The allegations in the second sentence of Paragraph 47 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or belief to answer the allegations in that sentence and on that basis denies them.

48.    Katz Technology Licensing admits that an attorney representing CVS sent a letter to an attorney representing Katz Technology Licensing on December 19, 2006, advising that CVS was terminating negotiations with Katz Technology Licensing.  Katz Technology Licensing further admits has asserted certain of its patents against The Jean Coutu Group (PJC) USA, Inc. and others in an action captioned *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.*  Katz Technology Licensing lacks information or belief to answer the remaining allegations in Paragraph 48 and on that basis denies them.

49.    Katz Technology Licensing admits that it has asserted the '021, '065, '120, '150, '223, '252, '285, '309, '360, '415, '551, '703, '707, '734, '762, '863, '893, '965, '968, and '984 patents against The Jean Coutu Group (PJC) USA, Inc., Eckerd Corporation, Brooks Pharmacy, Inc., Maxi Drug, Inc. and Maxi Drug North, Inc. in *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.,* Case No. 1:06-CV-00545-GMS.

50.    Katz Technology Licensing admits that it has asserted the '021, '120, '134, '150, '223, '252, '285, '309, '551, '703, '707, '734, '863, '893, '968, and '984 patents against Rite Aid Corporation and Rite Aid of Delaware, Inc. in *Ronald A. Katz Technology Licensing, L.P. v. Ahold, et al.,* Case No. 1:06-CV-00545-GMS.

51.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 51 and on that basis denies them.

52.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 52 and on that basis denies them.

<u>2003 LETTER SENT TO J.C. PENNEY CORPORATION</u>

53.     Katz Technology Licensing admits that its attorneys sent a letter regarding Katz Technology Licensing's patent portfolio to the J.C. Penney Corporation on or about June 24, 2003 ("the J.C. Penney letter"). Katz Technology Licensing lacks information or belief to answer the allegations in that second sentence of Paragraph 53 and on that basis denies them. Katz Technology Licensing denies any remaining allegations in Paragraph 53.

54.     Katz Technology Licensing admits that Laurie Adams of Heller Ehrman sent a letter to an attorney representing CVS on December 1, 2005 and that Ms. Adams enclosed a copy of the 2003 J.C. Penney letter with her 2005 letter to CVS. Katz Technology Licensing lacks information or belief to answer the remaining allegations in Paragraph 54 and on that basis denies them.

55.     Katz Technology Licensing admits that the J.C. Penney letter stated: "Claims that have been of interest to other companies that provide similar automated services include: [certain claims of the '707, '156, '863, '893, '547, '065, '965, '223 and '415 patents]." Katz Technology Licensing denies any remaining allegations in Paragraph 55.

56.     Katz Technology Licensing admits that the J.C. Penney letter stated: "This meeting would be designed to provide element-by-element examples of how exemplary RAKTL claims (which may not conform exactly to the list above) apply to J.C. Penney's operations." Katz Technology Licensing denies any remaining allegations in Paragraph 56.

57.     Katz Technology Licensing admits that the J.C. Penney letter stated: "The breadth and scope of the claims in the portfolio were demonstrated in an infringement lawsuit brought by RAKTL in the United States District Court for the District of Eastern Pennsylvania. . . . The case settled in November 2000 with the defendant agreeing to purchase a license under the RAKTL patent portfolio." Katz Technology Licensing denies any remaining allegations in Paragraph 57.

9

## ALLEGED INEQUITABLE CONDUCT

58.     Katz Technology Licensing denies the allegations set forth in Paragraph 58.

59.     The allegations in Paragraph 59 constitute legal conclusions to which no response is required.

60.     Katz Technology Licensing denies the allegations set forth in Paragraph 60.

61.     Katz Technology Licensing admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include U.S. Patent Nos. 4,845,739 ("the '739 patent"); 5,014,298 ("the '298 patent"); 5,048,075 ("the '075 patent"); 5,073,929 ("the '929 patent"); 5,224,153 ("the '153 patent"); 5,359,645 ("the '645 patent"); 5,365,575 ("the '575 patent"); 6,016,344 ("the '344 patent") and U.S. Patent Application Nos. 06/753,299 ("the '299 application"); 07/640,337 ("the '337 application") and 07/342,506 ("the '506 application"). The term "relevant" as used in the first sentence of Paragraph 61 and the term "related" as used throughout Paragraph 61 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the remaining allegations in Paragraph 61.  Further, to the extent the terms "relevant" and "inequitable conduct" are intended to allege legal relevance or the outcome of the complaint filed by CVS, the allegation constitutes a legal conclusion to which no response is required.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 61.

62.     Katz Technology Licensing denies all the allegations set forth in Paragraph 62

### Alleged Failure to Disclose Material Prior Art

63.     Katz Technology Licensing denies all the allegations set forth in Paragraph 63.

10

## THE BARGER PATENT

64.    Katz Technology Licensing admits that on its face, U.S. Patent No. 4,071,698 ("the '698 patent") indicates that it was issued to Barger, Jr., *et al*.  Katz Technology Licensing further admits that it had knowledge of the '698 patent in 1989.  Katz Technology Licensing admits that the '698 patent was not disclosed during the prosecution of the '984, '739, '150, '298, '929, and '252 patents.  Katz Technology Licensing denies all the remaining allegations set forth in Paragraph 64.

65.    Katz Technology Licensing admits that on its face, the '698 patent indicates that it was filed in the United States Patent and Trademark Office ("USPTO") on January 10, 1977.  The remaining allegations in Paragraph 65 constitute legal conclusions to which no response is required.

66.    Katz Technology Licensing admits that on its face, the '698 patent is titled "Telephone System For Audio Demonstration And Marketing Of Goods Or Services."  The term "material" in the first sentence of Paragraph 66 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent this term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  As to the remaining allegations in Paragraph 66 relating to the system allegedly disclosed by the Barger patent, the '698 patent speaks for itself and no further response is required.

67.    The allegations in Paragraph 67 relate to the system allegedly disclosed by the Barger patent; Katz Technology Licensing responds that the '698 patent speaks for itself and no further response is required.

68.    The terms "central features claimed" and "material" as used in the first sentence of Paragraph 68 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the terms "central features" and "material" are intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.

11

The remaining allegations in Paragraph 68 relate to the system allegedly disclosed by the Barger patent; Katz Technology Licensing responds that the '698 patent speaks for itself and no further response is required.

69.    Katz Technology Licensing admits that in Appeal No. 94-0834, the Board of Patent Appeals and Interferences affirmed an Examiner's rejection of certain of Katz's pending claims in Application No. 07/640,337. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 69.

70.    Katz Technology Licensing admits that the USPTO cited the Barger patent in its Decision on Request for Reexamination, Control No. 90/008,057, dated July 27, 2006, relating to the '285 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 70.

71.    Katz Technology Licensing admits that the USPTO cited the Barger patent in its Decision on Request for Reexamination, Control No. 90/008,039, dated July 21, 2006, relating to the '551 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 71.

72.    Katz Technology Licensing admits that the USPTO cited the Barger patent in its Decision on Request for Reexamination, Control No. 90/008,051, dated July 21, 2006, relating to the '223 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 72.

73.    Katz Technology Licensing admits that the USPTO cited the Barger patent in its Decision on Request for Reexamination, Control No. 90/008,095, dated September 22, 2006, relating to the '863 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 73.

74.    The terms "materiality" and "relevance" as used in the first sentence of Paragraph 74 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent those terms are intended to allege legal materiality or relevance, the

allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that the '698 patent was cited in a Supplementary European Search Report dated December 27, 1988 during the prosecution of PCT Application No. WO 87/00375. Katz Technology Licensing also admits that PCT Application No. WO 87/00375 claims priority to U.S. Patent Application No. 06/753,299. Katz Technology Licensing further admits that the Supplementary European Search Report identified the '698 patent as a "category x" document. The contents of that search report speak for themselves and the allegations relating to the report require no further response. Katz Technology Licensing admits that a copy of the search report was sent to Mr. Graham F. Coles. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 74.

75. Katz Technology Licensing admits that the patents-in-suit claim priority to United States Patent Application No. 06/753,299, which was filed with the USPTO on July 10, 1985. The term "materiality" as used in the second sentence of Paragraph 75 is so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent the term "materiality" is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 75.

76. Katz Technology Licensing admits that it is the owner of the '698 patent by way of an assignment from First Data Resources, Inc. executed September 17, 1994. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 76.

77. Katz Technology Licensing admits that the '698 patent was not disclosed during the prosecution of the '984, '739, '150, '298, '929, and '252 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 77.

78. Katz Technology Licensing denies that the '698 patent was not disclosed during the prosecution of the '285 patent. Katz Technology Licensing admits that the '698 patent was listed on an information disclosure statement dated September 20, 1994, filed in

connection with U.S. Patent Application No. 08/047,241, which led to the issuance of the '285 patent. Katz Technology Licensing further admits that the '285 patent issued on September 27, 1994. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 78.

79.     Katz Technology Licensing admits that the '984, '150 and '285 patents are among the patents-in-suit. Katz Technology Licensing further admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '739, '150, '252, '285, '298, '929 and '984 patents. In connection with the allegations in Paragraph 79, the terms "intentionally withheld," "intent to deceive," "beyond which Katz was entitled," "inequitable conduct," "unenforceable" and "related, material subject matter" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 79.

80.     Katz Technology Licensing denies all allegations set forth in Paragraph 80.

81.     Katz Technology Licensing admits that the '156 patent is among the patents-in-suit. Katz Technology Licensing denies that the '156 patent claims priority from the '150 and '285 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 81.

82.     Katz Technology Licensing further admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the  patent, may include the '739 patent. Katz Technology Licensing further admits that terminal disclaimers were filed during the prosecution of the '863, '551, '065 and '360 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 82.

83.     Katz Technology Licensing admits that the '965 patent is among the patents-in-suit. Katz Technology Licensing further admits that the '965 patent claims priority from other patents and applications that include the '153 and '298 patents. The term "material" in the first sentence of Paragraph 83 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the remaining

14

allegations in that sentence.    Further, to the extent that the terms "material" and/or "unenforceable" are intended to allege legal materiality or unenforceability, the allegation constitutes a legal conclusion as to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 83.

84.    Katz Technology Licensing admits that the '734, '120, and '223 patents are among the patents-in-suit.  Katz Technology Licensing further admits that the '120 and '223 patents claim priority from other patents and applications that include the '929, '984 and '252 patents and the '734 patent claims priority from the '984 and '252 patents.  Katz Technology Licensing further admits that terminal disclaimers were filed during the prosecution of the '734, '120 and '223 patents.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 84.

85.    Katz Technology Licensing denies all allegations set forth in Paragraph 85.

<u>THE DEBRUYN PATENT</u>

86.    Katz Technology Licensing admits that on its face, European Patent No. 0032410 indicates that it was issued to DeBruyn.  Katz Technology Licensing admits that European Patent No. 0032410 was not disclosed during the prosecution of the '150, '252, '285, '739, '929, and '984 patents.  Katz Technology Licensing further admits that the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '150, '984, '252, '285, '739 or '929 patents.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 86.

87.    Katz Technology Licensing admits that the European Patent Office published European Patent Specification EP0032410A1 on July 22, 1981.  The remaining allegations in Paragraph 87 constitute legal conclusions to which no response is required.

88.    The term "material" in the first sentence of Paragraph 88 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent this term is intended to allege

legal materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 88 relate to the system allegedly disclosed by European Patent No. 0032410; Katz Technology Licensing responds that European Patent No. 0032410 speaks for itself and no further response is required.

89.    The allegations in Paragraph 89 relate to the system allegedly disclosed by European Patent No. 0032410; Katz Technology Licensing responds that European Patent No. 0032410 speaks for itself and no further response is required.

90.    The terms "relevant" and "material" in the first sentence of Paragraph 90 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent these terms are intended to allege legal relevance or materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 90 relate to the system allegedly disclosed by European Patent No. 0032410; Katz Technology Licensing responds that European Patent No. 0032410 speaks for itself and no further response is required.

91.    Katz Technology Licensing admits that Canadian Patent No. 1,162,336 was cited in the Order Granting Request for Reexamination for each of U.S. Patent Nos. 5,561,707 ("the '707 patent") and 5,255,309 ("the '309 patent"). Katz Technology Licensing further admits that the Director Initiated Order for Reexamination with respect to the '309 patent states: "In view of the teachings of Canadian Patent 1,162,336 to DeBruyn, a substantial new question of patentability is raised as to claim 23 of U.S. Patent No. 5,255,309, and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Katz Technology Licensing further admits that the '707, '309, and '023 patents claim priority from, among other patents and applications, the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 91.

92.    Katz Technology Licensing admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/007,092 & 90/006,976), dated September 9, 2005, states that "Claims 23, 25-37, 41-43, 46, 50 and 51 are rejected under 35 U.S.C. 102(b) as

being anticipated by Canadian Patent No. 1,162,336, DeBruyn . . . ."  Katz Technology Licensing further admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/007,092 & 90/006,976), dated September 9, 2005, rejected claims 1, 7-12, 14, 20, 24, 32, 38-42, 52-58 pursuant to 35 U.S.C. § 103(a) based in part or in whole on Canadian Patent No. 1,162,336.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 92.

93.    The term "materiality" as used in the first sentence of Paragraph 93 is so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term "materiality" is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  Katz Technology Licensing admits that the Barger patent '698 patent and the DeBruyn patent, European Patent No. 0032410, were cited in a Supplementary European Search Report dated December 27, 1988 during the prosecution of PCT Application No. WO 87/00375.  Katz Technology Licensing further admits that the Supplementary European Search Report identified European Patent 0032410 as a "category x" document.  Katz Technology Licensing further admits that a copy of the search report was sent to Mr. Graham F. Coles.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 93.

94.    Katz Technology Licensing admits that European Patent No. 0032410 was not disclosed during the prosecution of the '150, '075, '739, '929, '984, and '252 patents.  The terms "materiality" and "material prior art" as used in Paragraph 94 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the remaining allegations in Paragraph 94.  Further, to the extent the terms "materiality" and "material prior art" are intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 94.

95.    Katz Technology Licensing denies that the DeBruyn patent was not disclosed during the prosecution of the '285 patent. Katz Technology Licensing admits that Canadian Patent No. 1, 162,336, issued to DeBruyn, was disclosed during the prosecution of the '285 patent on September 20, 1994. Katz Technology Licensing admits that the '285 patent issued on September 27, 1994. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 95.

96.    Katz Technology Licensing admits that the '150, '285 and '984 patents are among the patents-in-suit. Katz Technology Licensing further admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '739, '075, '929 and '252 patents. In connection with the allegations in Paragraph 96, the terms "intentionally withheld," "intent to deceive," "beyond which Katz was entitled," "inequitable conduct," "unenforceable" and "related, material subject matter" are legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 96.

97.    Katz Technology Licensing denies all allegations set forth in Paragraph 97.

98.    Katz Technology Licensing admits that the '021, '065, '120, '134, '150, '156, '223, '252, '285, '309, '360, '415, '551, '703, '707, '734, '762, '863, '893, '965, '968, and '984 patents are among the patents-in-suit. Katz Technology Licensing further admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 98.

99.    Katz Technology Licensing admits that the '734, '120 and '223 patents are among the patents-in-suit. Katz Technology Licensing further admits that the '120 and '223 patents claim priority from other patents and applications that include the '929, '984 and '252 patents and the '734 patent claims priority from the '984 and '252 patents. Katz Technology Licensing further admits that terminal disclaimers were filed during the prosecution of the '734,

18

'120 and '223 patents.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 99.

100.    Katz Technology Licensing denies all allegations set forth in Paragraph 100.

<u>THE YOSHIZAWA ARTICLE</u>

101.    Katz Technology Licensing admits that an article titled "Voice Response System for Telephone Betting," by Yoshizawa, *et al*. ("the Yoshizawa article"), appeared in a 1977 issue of Hitachi Review.  Katz Technology Licensing admits that the '309 and '707 patents are among the patents-in-suit and that the '707 patent claims priority from the '309 patent.  Katz Technology Licensing denies that the Yoshizawa article was not disclosed to the USPTO during the prosecution of the '575 patent.  Katz Technology Licensing admits that the Yoshizawa article was disclosed to the PTO during the prosecution of the '575 patent on September 16, 1994.  Katz Technology Licensing admits that the Yoshizawa article was not disclosed to the USPTO during the prosecution of the '309 patent. Katz Technology Licensing further denies all remaining allegations set forth in Paragraph 101.

102.    Katz Technology Licensing admits that the Yoshizawa article is titled "Voice Response System for Telephone Betting."  The allegations in Paragraph 102 relate to the system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

103.    The allegations in Paragraph 103 relate to the system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

104.    The term "relevant" in the first sentence of Paragraph 104 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal relevance, the allegation constitutes a legal conclusion to which no response is required.

The remaining allegations in Paragraph 104 relate to the system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

      105.    The term "relevant" in the first sentence of Paragraph 105 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent the term is intended to allege legal relevance, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 105 relate to the system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

      106.    The term "materiality" in the first sentence of Paragraph 106 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that the Yoshizawa article was cited in a September 2, 1992 interrogatory response during discovery in *First Data Resources Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal.). Katz Technology Licensing denies all remaining allegations set forth in Paragraph 106.

      107.    Katz Technology Licensing denies all allegations set forth in Paragraph 107.

      108.    Katz Technology Licensing denies all allegations set forth in Paragraph 108.

      109.    Katz Technology Licensing denies all allegations set forth in Paragraph 109.

      110.    Katz Technology Licensing admits the '707 patent is among the patents-in-suit. Katz Technology Licensing further admits that the '707 patent claims priority from the '309 patent. Katz Technology Licensing further admits that terminal disclaimers were filed

during the prosecution of the '309 and '707 patents, which disclaimed the term of the '309 and '707 patents beyond the expiration of the '968 patent. Katz Technology Licensing denies all allegations set forth in Paragraph 110.

111. Katz Technology Licensing denies all allegations set forth in Paragraph 111.

112. Katz Technology Licensing admits the '156 patent is among the patents-in-suit. Katz Technology Licensing further admits that the '156 patent claims priority from the '575 patent. Katz Technology Licensing admits that a terminal disclaimer was filed during the prosecution of the '156 patent, which disclaimed the term of the '156 patent beyond the expiration of the '968 patent. Katz Technology Licensing denies all allegations set forth in Paragraph 112.

113. Katz Technology Licensing denies all allegations set forth in Paragraph 113.

## THE FLORAFAX BROCHURE

114. Katz Technology Licensing admits that a document dated January 22, 1986 that indicates that it was distributed by Florafax exists (the "Florafax brochure"). Katz Technology Licensing admits that the issue fee for the '575 patent was paid on June 29, 1994. Katz Technology Licensing denies that the Florafax brochure was not disclosed to the USPTO during the prosecution of the '575 patent. Katz Technology Licensing admits that the Florafax brochure was disclosed to the USPTO during the prosecution of the '575 patent on September 16, 1994. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 114.

115. The term "material" in the first sentence of Paragraph 115 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent this term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.

21

Katz Technology Licensing lacks sufficient information or knowledge to respond to the allegations in the last sentence of Paragraph 115 and therefore denies them. The remaining allegations in Paragraph 115 relate to the service allegedly disclosed by the Florafax brochure; Katz Technology Licensing responds that the brochure speaks for itself and no further response is required.

116.    Katz Technology Licensing denies all allegations set forth in Paragraph 116.

117.    Katz Technology Licensing admits that the Florafax brochure was produced in *First Data Resources Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal.). Katz Technology Licensing lacks sufficient information or knowledge to respond to the remaining allegations in Paragraph 117 and on that basis denies them.

118.    Katz Technology Licensing denies all allegations set forth in Paragraph 118.

119.    Katz Technology Licensing denies all allegations set forth in Paragraph 119.

120.    Katz Technology Licensing denies all allegations set forth in Paragraph 120.

121.    Katz Technology Licensing admits that the '703 patent is among the patents-in-suit. Katz Technology Licensing further admits that the '703 patent claims priority from other patents and applications that include the '575 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 121.

122.    Katz Technology Licensing denies all allegations set forth in Paragraph 122.

PERDUE AND HESTER ARTICLES

123.    Katz Technology Licensing admits that an article entitled "Conversant I Voice Systems: Architecture and Applications" by R.J. Perdue, *et al.* ("the Perdue article")

22

appeared in the September/October 1986 issue of *AT&T Technical Journal*. Katz Technology Licensing further admits that the Perdue article was not disclosed during the prosecution of the '309 patent. Katz Technology Licensing further admits that the Perdue article was cited by Examiner Thomas W. Brown during the prosecution of the '404 patent in an office action dated June 3, 1991. Katz Technology Licensing further admits that the Perdue article was cited by Examiner Brown during the prosecution of the '631 patent in an office action dated June 17, 1991. Katz Technology Licensing denies that Examiner Brown was unaware of the Perdue article during the prosecution of the '309 patent, the application leading to which was filed on December 3, 1991.

124.    Katz Technology Licensing admits that an paper entitled "The AT&T Multimode Voice Systems-Full Spectrum Solutions for Speech Processing Applications" by S. D. Hester, *et al.* ("the Hester article") was presented at the Proceedings of the 1985 AVIOS Conference in September, 1985. Katz Technology Licensing further admits that the Hester article was not disclosed during the prosecution of the '309 patent. Katz Technology Licensing further admits that the Hester article was cited by Examiner Thomas W. Brown during the prosecution of the '404 patent in an office action dated June 3, 1991. Katz Technology Licensing denies that Examiner Brown was unaware of the Perdue article during the prosecution of the '309 patent, the application leading to which was filed on December 3, 1991.

125.    The term "material" in the first sentence of Paragraph 125 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent this term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that an article entitled "AT&T's Conversant I Voice System" by John P. Moosemiller ("the Moosemiller article") appeared in the March/April 1986 issue of *Speech Technology*. Katz Technology Licensing further admits that in a non-final Office Action in Ex Parte Reexamination (Application Control Nos. 90/007,092; 90/006,976 and 90/007,884), dated September 29, 2006, states: "Claims 1-6, 13, 15-19, 21, and 22 are rejected under 35

U.S.C. 102(b) as being anticipated by the article Moosemiller entitled "AT&T's Conversant™ I Voice System" in *Speech Technology,* Mar/Apr 1986, pp. 88-93." The remaining allegations in Paragraph 125 relate to the service allegedly disclosed by the Perdue, Hester and Moosemiller articles; Katz Technology Licensing responds that the articles speak for themselves and no further response is required.

126. Katz Technology Licensing admits that the USPTO cited the Perdue article in its Decision on Request for Reexamination, Control No. 90/008,155, dated November 6, 2006, relating to the '734 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 126.

127. The term "materiality" used in Paragraph 127 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent this term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 127.

128. The terms "materiality" and "material prior art" used in Paragraph 128 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations. Further, to the extent these terms are intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 128.

129. Katz Technology Licensing admits that the '309 patent is among the patents-in-suit. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 129.

130. Katz Technology Licensing admits that the '707 patent claims priority from the '309 patent. Katz Technology Licensing denies that any of the other patents-in-suit claim priority from the '309 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 130.

131.    Katz Technology Licensing admits that the '707 and '309 patents are among the patents-in-suit.  Katz Technology Licensing admits that terminal disclaimers were filed during the prosecution of the '309 and '707 patents, which disclaimed the term of the '309 and '707 patents beyond the expiration of the '968 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 131.

132.    Katz Technology Licensing denies all allegations set forth in Paragraph 132.

## INTERNATIONAL APPLICATION WO 87/00375

133.    Katz Technology Licensing admits that the '285 patent is among the patents-in-suit.  Katz Technology Licensing denies that PCT Application No. WO 87/00375 ("the WO '375 application") was not disclosed to the USPTO during the prosecution of the '285 patent.  Katz Technology Licensing admits that the issue fee for the '285 patent was paid on June 3, 1994.  Katz Technology Licensing further admits that the WO '375 application was disclosed to the USPTO during the prosecution of the '285 patent on September 20, 1994.  Katz Technology Licensing admits that the WO '375 application was not disclosed to the USPTO during the prosecution of the '739 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 133.

134.    Katz Technology Licensing admits that the WO '375 application is titled "Statistical Analysis System for Use with Public Communication Facility."  The remaining allegations relate to the system allegedly disclosed in the WO '375 application; Katz Technology Licensing responds that the application speaks for itself and that no further response is required.

135.    Katz Technology Licensing admits that the WO '375 application was filed pursuant to the Patent Cooperation Treaty ("PCT") and published on January 15, 1987.  The remaining allegations in Paragraph 135 constitute legal conclusions to which no response is required.

136.    Katz Technology Licensing admits that the application that led to the '739 patent was filed on May 16, 1998 and that the application that led to the '285 patent was filed on April 13, 1993.  The allegations in the second and third sentences of Paragraph 136 relate to the contents of the '739 and the '285 patents and the WO '375 application, which speak for themselves and as to which no further response is required.   The remaining allegations in Paragraph 136 constitute legal conclusions to which no response is required.

137.    The terms "material," "materiality" and "relevant" in Paragraph 137 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations.  Further, to the extent these terms are intended to allege legal materiality or relevance, the allegations constitute legal conclusions to which no response is required.  Katz Technology Licensing admits that PCT Application No. WO 87/00375 was cited by the examiner in an Office Action dated March 5, 1991 for U.S. Patent Application No. 07/425,779, which resulted in the issued '984 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 137.

138.    Katz Technology Licensing admits that the patent applicant had knowledge of the WO '375 application during prosecution of the '739 and '285 patents.  The term "duty to disclose information material to the patentability of any of Katz's pending patent applications" is so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations.  Further, to the extent these terms are intended to allege a legal duty or legal materiality, the allegations constitute legal conclusions to which no response is required.  Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 138.

139.    Katz Technology Licensing admits that the '285 patent is among the patents-in-suit.  Katz Technology Licensing further admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '739 patent.  In connection with the allegations in Paragraph 139, the terms "intentionally withheld," "intent to deceive," "beyond which Katz was entitled," "inequitable conduct,"

26

"unenforceable" and "related, material subject matter" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 139.

140.    Katz Technology Licensing admits that certain of the patents-in-suit claim priority from other patents and applications that, depending upon the patent, may include the '739 and '285 patents.  In connection with the allegations in Paragraph 140, the terms "inequitable conduct," "material," and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 140.

141.    Katz Technology Licensing denies all allegations set forth in Paragraph 141.

THE DAUDELIN '995 PATENT

142.    Katz Technology Licensing admits that U.S. Patent No. 4,943,995 was not disclosed during the prosecution of the '120 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 142.

143.    Katz Technology Licensing admits that U.S. Patent No. 4,943,995, on its face, indicates that it was filed with the USPTO on October 8, 1986 and issued on July 24, 1990 to Daudelin, *et al*. ("the Daudelin '995 patent").  Katz Technology Licensing further admits that U.S. Patent No. 5,974,120 was filed on June 7, 1995.  The remaining allegations in Paragraph 143 constitute legal conclusions to which no response is required.

144.    The term "material" in the first sentence of Paragraph 144 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 144 relate to the system allegedly disclosed by the

27

Daudelin '995 patent; Katz Technology Licensing responds that the patent speaks for itself and no further response is required.

145.    The term "material" in the first sentence of Paragraph 145 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 145 relate to the claims of the '120 patent; Katz Technology Licensing responds that the patent speaks for itself and no further response is required.

146.    Katz Technology Licensing admits that the Daudelin '995 patent was disclosed to the USPTO during the prosecution of certain patents-in-suit.  Katz Technology Licensing further admits that the Daudelin '995 patent was disclosed to the USPTO more than two years prior to the issuance of the '120 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 146.

147.    Katz Technology Licensing denies all allegations set forth in Paragraph 147.

148.    Katz Technology Licensing denies all allegations set forth in Paragraph 148.

149.    Katz Technology Licensing admits that the '223 patent is among the patents-in-suit.  Katz Technology Licensing further admits that the '223 patent claims priority to other patents and applications that include the '120 patent.  In connection with the allegations in Paragraph 149, the terms "inequitable conduct," "material," and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 149.

150.    Katz Technology Licensing denies all allegations set forth in Paragraph 150.

## THE SZLAM '911 PATENT

151.    Katz Technology Licensing admits that on its face, U.S. Patent No. 4,797,911 indicates that it was issued to Szlam, *et al*. ("the Szlam '911 patent").    Katz Technology Licensing admits it was aware of the the Szlam '911 patent during the prosecution of the '309 patent.  Katz Technology Licensing further admits that the Szlam '911 patent was not disclosed during the prosecution of the '309 patent.  Katz Technology Licensing further admits it the '309 is among the patents-in-suit.    Katz Technology Licensing denies any remaining allegations set forth in Paragraph 151.

152.    Katz Technology Licensing admits that on its face, the Szlam '911 patent indicates that it was filed on June 16, 1987 and issued on January 10, 1989.  Katz Technology Licensing admits that the application which led to the issuance of the '309 patent was filed on December 3, 1991.  The remaining allegations in Paragraph 152 are legal conclusions to which no response is required.

153.    The allegations in the first sentence of Paragraph 153 relate to the system allegedly disclosed by the Szlam '911 patent; Katz Technology Licensing responds that the Szlam '911 patent speaks for itself and no further response is required.    The remaining allegations set forth in Paragraph 153 constitute legal conclusions to which no response is required.

154.    The term "material" used in the first and third sentences of Paragraph 154 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in those sentences.  Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  The allegations in the second sentence of Paragraph 154 relate to the system allegedly disclosed by the Szlam '911 patent; Katz Technology Licensing responds that the Szlam '911 patent speaks for itself and no further response is required.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 154.

155. Katz Technology Licensing admits that during the prosecution of the '150 patent, it stated in an amendment dated October 5, 1989: "It is noteworthy that the utilization of ANI and DNIS signals is not foreign to the patent literature. In that regard, the following patents are deemed relative to the present application: . . . U.S. Patent 4,797,922 – Szlam et al. - CUSTOMER ACCOUNT ON-LINE SERVICING SYSTEM. . . . It is generally noteworthy that neither Riskin nor Szlam appears to be a reference with regard to the present case; however, as a further consideration it is significant that the claims herein clearly distinguish the disclosure of these patents." Katz Technology Licensing denies any remaining allegations set forth in Paragraph 155.

156. Katz Technology Licensing denies all allegations set forth in Paragraph 156.

157. Katz Technology Licensing denies all allegations set forth in Paragraph 157.

158. Katz Technology Licensing admits that the '707 patent is among the patents-in-suit. Katz Technology Licensing further admits that the '707 patent claims priority from the '309 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 158.

159. Katz Technology Licensing denies all allegations set forth in Paragraph 159.

## THE PERIPHONICS ART

160. Katz Technology Licensing denies the allegations set forth in the first sentence of Paragraph 160. Katz Technology Licensing lacks information and knowledge to answer the allegation that materials bearing Bates numbers W72807-W73756 were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green in connection with *First Data Resources Inc. v. West Interactive Corp.*, CV 91-4471 TJH (C.D. Cal.) (the "*West*" case) and therefore denies it. Katz Technology Licensing admits that Byard Nilsson and Reena Kuyper, who were at one time

affiliated with the Nilsson, Wurst & Green law firm, were involved in prosecuting certain of Mr. Katz's patent applications that ultimately issued as certain of the patents-in-suit. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 160.

161. Katz Technology Licensing admits that the application for the '965 patent stated: "During the litigation of [the *West* case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." U.S. Patent Application 08/306,456, Paper no. 3, filed November 4, 1994. Katz Technology Licensing further admits that the application also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994. Katz Technology Licensing denies any remaining allegations set forth in Paragraph 161.

162. No response is required to the allegations in Paragraph 162 to the extent the allegations of Paragraph 162 refer to various patent applications, as the applications speak for themselves. To the extent any further response is required, Katz Technology Licensing lacks information or knowledge sufficient to form a belief as to the truthfulness of the full meaning in and intent of any remaining allegations in Paragraph 162 and therefore denies those allegations.

163. In response to the allegations of Paragraph 163, Katz Technology Licensing incorporates it responses to paragraphs 161 and 162. Katz Technology Licensing further responds that it lacks sufficient information and knowledge to answer the remaining allegations set forth in Paragraph 163 and therefore denies them.

164. Katz Technology Licensing is unable to ascertain the meaning of the allegation in Paragraph 164 that references are "highly relevant to many claims," and therefore denies them on the basis that Katz Technology Licensing lacks sufficient information and knowledge to answer such allegations. Further, to the extent that this phrase is meant to allege legal relevance, the allegations constitute legal conclusions to which no response is required.

Katz Technology Licensing lacks information and knowledge to answer any remaining allegations set forth in Paragraph 164, and therefore denies them.

165.    The terms "knowingly withheld," "materiality," "violation of the duty of candor and good faith," "inequitable conduct," "rendered unenforceable," and "inequitable conduct" used in Paragraph 165 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent these terms are intended to allege legal intent, materiality or conclusions regarding duty, conduct or enforceability, the allegations constitute legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 165.

166.    The terms "directly related" and "rendered unenforceable" as used in the first sentence of Paragraph 166 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent these terms are intended to allege legal relevance or conclusions regarding enforceability, the allegations constitute legal conclusions to which no response is required.  To the extent the allegations of Paragraph 166 refer to the content of patent specifications, Katz Technology Licensing responds that the patents speak for themselves and no further response is required.  Katz Technology Licensing admits that (a) the '360 patent is a continuation of the '065 patent, which is a continuation of the '551 patent, which is a continuation of the '344 patent; (b) the '707 patent is a continuation of the '309 patent, which is a divisional application of Application No. 07/640,377, which is a continuation of the '344 patent; and (c) that the '863 patent is a continuation of the '344 patent, which is a continuation of the '739 patent.  Katz Technology Licensing further admits that any patent term subsequent to the term of the '739 patent has been disclaimed with respect to the '065, '360, '707, '863, and '551 patents, but that pursuant to 35 U.S.C. § 154(a)(2), the patent terms of the '065 and '360 patents were already set to expire prior to the term of the '739 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 166.

167.    Katz Technology Licensing denies all allegations set forth in Paragraph 167.

## Alleged Failure to Inform the USPTO of Inconsistent Postitions Taken During Prosecution
### THE DAUDELIN PATENTS

168.    Katz Technology Licensing admits that the Daudelin '955 patent; U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent"); and 4,922,519 ("the Daudelin '519 patent") were disclosed to the USPTO during prosecution of certain of the patents-in-suit.  The remaining allegations of Paragraph 168 relate to the contents of the Daudelin '955, '910, and '519 patents; Katz Technology Licensing responds that the patents speak for themselves and no further response is required.

169.    Katz Technology Licensing denies all allegations set forth in Paragraph 169.

170.    Katz Technology Licensing admits that during prosecution of the '734 patent, certain documents, including the Daudelin '910 patent, were identified in a March 14, 1995 Supplemental Amendment, and that the patent applicant stated:  "Of the above documents, those identified by a reference numeral D may be pertinent to DNIS capabilities and those identified by reference numeral A may be pertinent to ANI capabilities."  Katz Technology Licensing further admits that the Daudelin '910 patent was not identified with a "D" or an "A" during prosecution of the '734 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 170.

171.    Katz Technology Licensing admits that during prosecution of the '551 patent, certain documents, including the Daudelin '910 patent, were identified in an October 2, 1996 Information Disclosure Statement, and that the patent applicant stated: "From all of the documents listed on the attached Forms PTO-1449, the Examiner's attention is particularly drawn to certain patents and references identified below that may be of possible interest to certain features of Applicant's system, such as ANI and/or DNIS.  Each of the documents that

has some disclosure of DNIS or like function is indicated with a 'D' beside it. Each of the documents that has some disclosure of ANI or like function is indicated with an 'A' beside it." Katz Technology Licensing further admits that the Daudelin '910 patent was identified with a "D" during prosecution of the '551 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 171.

172.    Katz Technology Licensing admits that the statement, "[a]lthough the present claims are variously distinct for a myriad of reasons, two significant reasons are that Daudelin does not teach DNIS nor does it teach displaying data entered by a caller at the operator terminal" was made by the patent applicant during the prosecution of the '360 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 172.

173.    Katz Technology Licensing denies all allegations set forth in Paragraph 173.

174.    Katz Technology Licensing admits that the '120, '065, and '223 patents are among the patents-in-suit. Katz Technology Licensing further admits that the '120, '065, and '223 patents claim priority to one or more of the '551, and '734 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 174.

175.    Katz Technology Licensing denies all allegations set forth in Paragraph 175.

## THE RISKIN PATENT

176.    Katz Technology Licensing admits that on its face, U.S. Patent No. 4,757,267 indicates that it was issued to Riskin. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 176.

177.    Katz Technology Licensing admits that the statement, "[r]ecognizing that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing, it is respectfully submitted that applicant's system involves entirely different philosophical considerations and structure" was made by the patent applicant during the

prosecution of the '075 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 177.

178.     Katz Technology Licensing admits that U.S. Patent No. 4,757,267 was on a list of patents disclosed to the USPTO during the prosecution of the '120 patent. Katz Technology Licensing admits that U.S. Patent No. 4,757,267 was indicated with an "A" beside it to indicate that it "may be pertinent to ANI capabilities." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 178.

179.     Katz Technology Licensing denies all allegations set forth in Paragraph 179.

180.     Katz Technology Licensing admits that the '703 and '223 patents are among the patents-in-suit. Katz Technology Licensing further admits that the '703 and '223 patents claim priority from one or more of the '075 and '120 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 180.

181.     Katz Technology Licensing denies all allegations set forth in Paragraph 181.

### Alleged Failure to Identify or Disclose Material Information from Other Litigations or Proceedings

182.     The allegations in Paragraph 182 constitute legal conclusions to which no response is required.

183.     Katz Technology Licensing denies all allegations set forth in Paragraph 183.

### *WEST INTERACTIVE CORP. V. FIRST DATA RESOURCES, INC.* LITIGATION

184.     Katz Technology Licensing admits that West Interactive Corp. brought a declaratory judgment action against First Data Resources, Inc. in the United States District Court for the District of Nebraska. Katz Technology Licensing further admits that West alleged that

35

the '739, '150, and '773 patents were invalid. Katz Technology Licensing denies the remaining allegations in Paragraph 184.

185.    Katz Technology Licensing admits that the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415 and '360 patents claim priority to, among other patents and applications, the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 185.

186.    Katz Technology Licensing admits that it was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation during the prosecution of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, 415 and '360 patents.. Katz Technology Licensing denies the remaining allegations in Paragraph 186.

187.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in the first sentence of Paragraph 187 and therefore denies them. The allegations set forth in the second sentence of Paragraph 187 are vague and uncertain and are therefore denied. The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 187.

*FIRST DATA RESOURCES, INC. V. 900 MILLION, INC.* LITIGATION

188.    Katz Technology Licensing admits that on October 9, 1990, First Data Resources, Inc. brought suit against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150, and '773 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 188.

189.    Katz Technology Licensing admits that the defendants in the *First Data Resources, Inc. v. 900 Million, Inc.*, litigation brought a counterclaim alleging invalidity and

unenforceability of the '739, '150, and '773 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 189.

190.    Katz Technology Licensing admits that certain of the '984, '252, '309, '707, '285, '863, '551, '734, '762, '893, '120, '965, '703 and '360 patents claim priority to other patents and applications that include the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 190.

191.    The term "material information arising therefrom" is so vague and ambiguous that Katz Technology Licensing lacks sufficient information and knowledge to respond and therefore denies these allegations. Further, to the extent the term is intended to allege legal materiality, the allegations constitute legal conclusions to which no response is required. Katz Technology Licensing admits that it was aware of the *First Data Resources, Inc. v. 900 Million, Inc.* litigation during the prosecution of the '984, '252, '309, 707, '285, '863, '551, '734, '762, '893, '120, '965, '703 and '360 patents. Katz Technology Licensing denies all remaining allegations in Paragraph 191.

192.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in the first sentence of Paragraph 192 and therefore denies them. The allegations set forth in the second sentence of Paragraph 192 are vague and uncertain and are therefore denied. The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 192.

*FIRST DATA RESOURCES INC. V. WEST INTERACTIVE CORP., ET AL.* LITIGATION

193.    Katz Technology Licensing admits that on August 20, 1991, First Data Resources, Inc. brought suit against West Interactive Corp and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement

of the '739, '150, and '298 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 193.

194.    Katz Technology Licensing admits that the defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation brought a counterclaim alleging invalidity and unenforceability of the '739, '298, and '150 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 194.

195.    Katz Technology Licensing admits that certain of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415 and '360 patents claim priority to other patents and applications that may, depending upon the patent, include the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 195.

196.    Katz Technology Licensing admits that it was aware of the *First Data Resources, Inc. v. West Interactive Corp., et al.* litigation during the prosecution of the '309, '707, '984, '252, '285, '863, '551, '734, '120, '762, '893, '021, '065, '965, '703, '223, '415 and '360 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 196.

197.    Katz Technology Licensing admits that the existence of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain documents from that litigation were disclosed to Examiner Stella Woo during prosecution of the '285 patent. Katz Technology Licensing denies that Examiner Woo was unaware of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain document arising from that litigation during prosecution of the '734 and '120 patents. Katz Technology Licensing further admits that the existence of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain documents from that litigation were disclosed to Examiner Thomas W. Brown during the prosecution of the '707 patent. Katz Technology Licensing denies that Examiner Brown was unaware of the litigation and certain document arising from that litigation during prosecution of the '863 and '551 patents. Katz Technology Licensing admits that the existence of the *First Data Resources, Inc. v. West*

*Interactive Corp.* litigation and certain documents from that litigation were not disclosed during the prosecution of the '984 patent.  The allegations set forth in the second sentence of Paragraph 197 are vague and uncertain and are therefore denied.  The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 197.

<u>*RONALD A. KATZ TECHNOLOGY LICENSING, L.P. V. MICRO VOICE APPLICATIONS, INC. ET AL.* LITIGATION</u>

198.    Katz Technology Licensing admits that on February 9, 1999, Katz Technology Licensing brought suit against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for the alleged infringement of the '739, '153, '252, '285, '863, '734, '023 and '707 patents.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 198.

199.    Katz Technology Licensing admits that the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation alleged that the '739, '153, '252, '023, '285, '707, '863 and '734 patents were invalid and/or unenforceable.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 199.

200.    Katz Technology Licensing denies all allegations set forth in Paragraph 200.

201.    Katz Technology Licensing admits that it was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation during the prosecution of the '065 and '965 patents.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 201.

202.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in the first sentence of Paragraph 202 and therefore denies them.  The allegations set forth in the second sentence of Paragraph 2002 are vague and uncertain and are therefore denied.  The terms "intent to deceive," "scope beyond which Katz was entitled,"

39

"inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.    Katz Technology Licensing denies the remaining allegations set forth in Paragraph 202.

### *RONALD A. KATZ TECHNOLOGY LICENSING, L.P., ET AL. V. A T& T CORP., ET AL,* LITIGATION

203.    Katz Technology Licensing admits that on July 8, 1997, Katz Technology Licensing brought suit against AT&T Corp. and others in the United States District Court for the Northern District of California for the alleged infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '645, '120, '707 and '863 patents.    Katz Technology Licensing denies the remaining allegations set forth in Paragraph 164.

204.    Katz Technology Licensing admits that AT&T alleged that the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '645, '120, '707, and '863 patents were invalid. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 204.

205.    Katz Technology Licensing denies all allegations set forth in Paragraph 205.

206.    Katz Technology Licensing admits that it was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp. et al.* litigation during the prosecution of the '120 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 206.

207.    Katz Technology Licensing admits that the existence of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* litigation and certain documents from that litigation were disclosed to Examiner Stella Woo during prosecution of the '021, '134 and '703 patents.  Katz Technology Licensing denies that Examiner Woo was unaware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* litigation and certain document arising from that litigation during prosecution of the '120 patent.  Katz Technology Licensing lacks sufficient information and knowledge to respond to the remaining allegations in the first sentence of Paragraph 207 and on that basis denies them.  The allegations set forth in the second sentence of Paragraph 207 are vague and uncertain and are therefore denied.  The terms "intent to deceive,"

"scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 207.

PATENT INTERFERENCE NO. 103,697

208.    Katz Technology Licensing admits that Patent Interference No. 103,697 was declared on February 13, 1996. Katz Technology further admits that a decision in Patent Interference No. 103,697 was issued on November 20, 1996. Katz Technology Licensing also admits that the Board of Patent Appeals and Interferences found that certain limitations of count 1 of Patent Interference No. 103,697 were not entitled to the benefit of the filing date of the '968 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 208.

209.    The term "material to the patent examiners" is so vague and ambiguous that Katz Technology Licensing lacks sufficient information and knowledge to respond and therefore denies these allegations. Further, to the extent the term is intended to allege legal materiality, the allegations constitute legal conclusions to which no response is required. Katz Technology Licensing admits that the '863, '965, '734, '762, '893, '120, '021 and '134 patents claim priority to other patents and applications that include the '968 patent. Katz Technology Licensing further admits that terminal disclaimers were filed during the prosecution of the '863, '551 and '134 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 209.

210.    Katz Technology Licensing admits that Patent Interference No. 103,697 was not expressly brought to the attention of the patent examiners during the prosecution of the '863, '156, '965, '734 and '120 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 210.

211.    Katz Technology Licensing admits that Patent Interference No. 103,697 was not expressly brought to the attention of the patent examiners during the prosecution of the

'863, '156, '965, '734 and '120 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 211.

212. Katz Technology Licensing denies all allegations set forth in Paragraph 212.

**Alleged Failure to Inform Patent Examiners of Adverse Findings by Others**

213. The allegations in Paragraph 213 relate to the Manual of Patent Examining Procedure; Katz Technology Licensing responds that the Manual speaks for itself and no further response is required.

OTHER PATENT PROSECUTIONS

214. Katz Technology Licensing admits that during prosecution of the '344 patent, the patent applicant asserted that the '968 patent specification supported the claim limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party identification number." Katz Technology Licensing further admits that in a Request for Information under 37 CFR 1.607, filed a part of the prosecution of the '344 patent, the statement, "[r]eferences cited are based on U.S. Patent No. 4, 792, 968 to Katz with a filing date on Feb. 14, 1987, of which the present application is a continuation" appeared in a footnote. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 214.

215. Katz Technology Licensing admits that in a May 16, 1990 non-final Office Action issued during the prosecution of the '344 patent, the examiner stated that, "the present application is not a continuation of '968." Katz Technology Licensing further admits that the '344 patent is a continuation of the '739 patent, which is a continuation-in-part of the '968 pate"). Katz Technology Licensing further admits that in the May 16, 1990 Office Action, the examiner states: "Applicants refer (R/l, bottom half of page 25) to '968's allusion (at column 5, lines 57-61) to '[Telephone number] data [which] could be taken directly from the system as it is available in certain telephone apparatus of the facility C.' The examiner concedes that one of

42

ordinary skill in the art would expect the cited patent passage to be referring to ANI signals available in many central offices; however, applicant's patent does not in fact disclose or describe any 'automatic number identification (ANI) decoder means' . . . ."  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 215.

216.    Katz Technology admits that Patent Interference No. 103,697 involves the '344 patent and is therefore part of the prosecution of the '344 patent.  Katz Technology Licensing further admits that the patent applicant asserted that the '968 patent specification supported the claim limitation "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility."  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 216.

217.    The allegations set forth in Paragraph 217 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and therefore denies those allegations.  Katz Technology Licensing lacks sufficient information or knowledge to respond to the allegations in the second sentence of Paragraph 217 and also denies those allegations on that basis.

218.    Katz Technology Licensing admits that Count 1 of Patent Interference was awarded to Szlam, *et al*.  The terms "repudiation," "material" and "lacking by the Board" are so vague and uncertain that Katz Technology Licensing lacks sufficient information and knowledge to respond and therefore denies them.  Further, to the extent those terms are intended to allege legal repudiation or materiality, the allegations constitute legal conclusions to which no response is required.  The last sentence of Paragraph 218 relates to Count 1 of Patent Interference 103,697; the contents of Count 1 speak for themselves and no further response is required.  Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 218.

219.    Katz Technology Licensing denies all allegations set forth in Paragraph 219.

220.    Katz Technology Licensing admits that during prosecution of the '344 patent, the applicant stated "Claim 68, as amended, requires receiving a customer identification

43

number for a caller that may be utilized to access a file for the individual caller, testing at least a portion of it for approval, and transferring a call from an individual caller to an operator attended terminal and displaying at least a portion of data stored in a file to the operator under control of the customer identification number to allow the operator to complete the call. Claim 68, as amended, is fully supported by Applicant's earlier parent patent no. 4,792,968, which was filed on February 24, 1987, before either Szlam et al. or Masson et al. filed their applications for patent." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 220.

221.     Katz Technology Licensing denies all allegations set forth in Paragraph 221.

222.     Katz Technology Licensing denies all allegations set forth in Paragraph 222.

223.     Katz Technology Licensing denies all allegations set forth in Paragraph 223.

224.     Katz Technology Licensing admits that in rejecting application claim 29 pursuant to 35 U.S.C. § 112 during the prosecution of the '551 patent, the examiner stated that, "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for 'person-to-person' interaction, much less that such interaction necessarily would result in data entries being transferred to the memory. However, the apparent intention of the disclosure as a whole is that such 'person-to-person' interaction between the caller and the operator after the transfer would be operationally similar to the fully-automatic interaction which is described in some detail." Katz Technology Licensing denies the remaining allegations set forth in Paragraph 224.

225.     Katz Technology Licensing admits that the '065 patent is a continuation of the '551 patent. Katz Technology Licensing further admits that the '360 patent is a continuation of the '065 patent. Katz Technology Licensing further admits that Examiner Weaver was involved in the prosecution of the '065 and '360 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 225.

226.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 226.

<u>APPEAL RULINGS</u>

227.    Katz Technology Licensing admits that certain Appeal Rulings of patents related to the patents-in-suit upheld rejections made by the patent examiner.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 227.

228.    The allegations in Paragraph 228 relate to the decision of the Board of Patent Appeals and Interferences in Appeal No. 94-0834; Katz Technology Licensing responds that the decision speaks for itself and no further response is required.

229.    The allegations set forth in Paragraph 229 constitute legal conclusions to which no response is required.

230.    Katz Technology Licensing admits that during the prosecution of the '734, '120, '065, and '965 patents, the patent applicant did not expressly inform the USPTO of the USPTO's own earlier decisions with respect to patent claims in related patent applications.  The remaining allegations set forth in Paragraph 230 constitute legal conclusions to which no response is required.

231.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 231.

232.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 232.

**<u>Alleged False Claims of Priority to Avoid Prior Art</u>**

233.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 233.

234.    Katz Technology Licensing admits that the '734 patent is a continuation of the '252 patent, which is a continuation of the '984 patent.  Katz Technology Licensing further admits that during prosecution of the '984 patent, the patent applicant stated that the "Katz

reference (R), International Publication No. WO 87/00375 coincides to the parent of U.S. Patent 4,792,968. In that regard, as now recited in the specification, the present application is a continuation-in-part of Serial No. 312,792; which is a continuation-in-part of Serial No. 194,258 (now patent 4,845,739); which is a continuation-in-part of Serial No. 018,244 (now patent 4,792,968); which is a continuation-in-part of Serial No. 753,299 which is the equivalent of the reference. Accordingly, the international application is not properly a reference against the present case." Katz Technology Licensing admits that the WO '375 application was published more than one year prior to the actual filing date of the '734 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 234.

235. Katz Technology Licensing admits that in an Amendment filed January 31, 1996 during the prosecution of the '734 patent, the patent applicant stated, "[a]lthough it is questionable whether the Brown patent even qualifies as prior art, Applicant in the interest of being candid, is bringing it to the Examiner's attention. The Brown patent has an issue date of November 20, 1990, and a filing date of September 20, 1989. It should be noted that the present application ultimately claims priority from Applicant's parent patent U.S. Patent No. 4,930,150, which predates the Brown patent with respect to disclosure of alternate access possibilities (*e.g.*, '800' or '900')." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 235.

236. Katz Technology Licensing admits that in a Supplemental Amendment filed March 14, 1995 during the prosecution of the '734 patent, the patent applicant stated, "[t]he reference by Hester bears a date of 1985, apparently 'September'. In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 236.

237. Katz Technology Licensing admits that in a Supplemental Amendment filed March 14, 1995 during the prosecution of the '734 patent, the patent applicant stated "U.S. Patent No. 4,797,913 (Kaplan et al.) is directed to a telephonic vending system involving the use of (ANI) information for qualification (column 2, line 50). However, it should be noted that in

that regard, the present application is entitled to a priority date earlier than that of the subject reference." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 237.

238.    Katz Technology Licensing denies all allegations set forth in Paragraph 238.

239.    Katz Technology Licensing admits that the '252, '120 and '223 patents claim priority from other patents and applications that include the '984 and '734 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 239.

## CONCLUSION

240.    Katz Technology Licensing denies all allegations set forth in Paragraph 240.

241.    Katz Technology Licensing denies all allegations set forth in Paragraph 241.

## CLAIM I
## THE '968 PATENT

242.    In response to Paragraph 242, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-241.

243.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 243, and on that basis denies the allegations in that paragraph.

244.    Katz Technology Licensing denies all allegations set forth in Paragraph 244.

245.    Katz Technology Licensing denies all allegations set forth in Paragraph 245.

246.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and

infringement of the '968 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 246.

<h2 align="center">CLAIM II</h2>

<h2 align="center">THE '150 PATENT</h2>

247.    In response to Paragraph 247, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-246.

248.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 248, and on that basis denies the allegations in that paragraph.

249.    Katz Technology Licensing denies all allegations set forth in Paragraph 249.

250.    Katz Technology Licensing denies all allegations set forth in Paragraph 250.

251.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '150 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 251.

252.    Katz Technology Licensing denies all allegations set forth in Paragraph 252.

<h2 align="center">CLAIM III</h2>

<h2 align="center">THE '984 PATENT</h2>

253.    In response to Paragraph 253, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-252.

254.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 254, and on that basis denies the allegations in that paragraph.

255.    Katz Technology Licensing denies all allegations set forth in Paragraph 255.

256.     Katz Technology Licensing denies all allegations set forth in Paragraph 256.

257.     Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '984 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 257.

258.     Katz Technology Licensing denies all allegations set forth in Paragraph 258.

## CLAIM IV

## <u>THE '252 PATENT</u>

259.     In response to Paragraph 253, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-258.

260.     Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 259, and on that basis denies the allegations in that paragraph.

261.     Katz Technology Licensing denies all allegations set forth in Paragraph 261.

262.     Katz Technology Licensing denies all allegations set forth in Paragraph 262.

263.     Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '252 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 263.

264.     Katz Technology Licensing denies all allegations set forth in Paragraph 264.

## CLAIM V

## <u>THE '309 PATENT</u>

265.    In response to Paragraph 265, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-264.

266.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 266, and on that basis denies the allegations in that paragraph.

267.    Katz Technology Licensing denies all allegations set forth in Paragraph 267.

268.    Katz Technology Licensing denies all allegations set forth in Paragraph 268.

269.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '309 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 269.

270.    Katz Technology Licensing denies all allegations set forth in Paragraph 270.

## CLAIM VI

## <u>THE '285 PATENT</u>

271.    In response to Paragraph 271, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-270.

272.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 272, and on that basis denies the allegations in that paragraph.

273.    Katz Technology Licensing denies all allegations set forth in Paragraph 273.

274.    Katz Technology Licensing denies all allegations set forth in Paragraph 274.

275.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '285 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 275.

276.    Katz Technology Licensing denies all allegations set forth in Paragraph 276.

## CLAIM VII

## THE '707 PATENT

277.    In response to Paragraph 277, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-276.

278.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 278, and on that basis denies the allegations in that paragraph.

279.    Katz Technology Licensing denies all allegations set forth in Paragraph 279.

280.    Katz Technology Licensing denies all allegations set forth in Paragraph 280.

281.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '707 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 281.

282.    Katz Technology Licensing denies all allegations set forth in Paragraph 282.

## CLAIM VIII

## THE '863 PATENT

283.    In response to Paragraph 283, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-282.

284.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 284, and on that basis denies the allegations in that paragraph.

285.    Katz Technology Licensing denies all allegations set forth in Paragraph 285.

286.    Katz Technology Licensing denies all allegations set forth in Paragraph 286.

287.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '863 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 287.

288.    Katz Technology Licensing denies all allegations set forth in Paragraph 288.

## CLAIM IX

## <u>THE '551 PATENT</u>

289.    In response to Paragraph 289, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-288.

290.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 290, and on that basis denies the allegations in that paragraph.

291.    Katz Technology Licensing denies all allegations set forth in Paragraph 291.

292.    Katz Technology Licensing denies all allegations set forth in Paragraph 292.

293.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '551 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 293.

294.   Katz Technology Licensing denies all allegations set forth in Paragraph 294.

## CLAIM X

## THE '734 PATENT

295.   In response to Paragraph 295, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-294.

296.   Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 296, and on that basis denies the allegations in that paragraph.

297.   Katz Technology Licensing denies all allegations set forth in Paragraph 297.

298.   Katz Technology Licensing denies all allegations set forth in Paragraph 298.

299.   Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '734 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 299.

300.   Katz Technology Licensing denies all allegations set forth in Paragraph 300.

## CLAIM XI

## THE '762 PATENT

301.   In response to Paragraph 301, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-300.

302.   Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 302, and on that basis denies the allegations in that paragraph.

303.   Katz Technology Licensing denies all allegations set forth in Paragraph 303.

304.    Katz Technology Licensing denies all allegations set forth in Paragraph 304.

305.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '762 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 305.

306.    Katz Technology Licensing denies all allegations set forth in Paragraph 306.

## CLAIM XII

## THE '893 PATENT

307.    In response to Paragraph 307, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-306.

308.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 308, and on that basis denies the allegations in that paragraph.

309.    Katz Technology Licensing denies all allegations set forth in Paragraph 309.

310.    Katz Technology Licensing denies all allegations set forth in Paragraph 310.

311.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '893 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 311.

312.    Katz Technology Licensing denies all allegations set forth in Paragraph 312.

## CLAIM XIII

## <u>THE '120 PATENT</u>

313.    In response to Paragraph 313, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-312.

314.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 314, and on that basis denies the allegations in that paragraph.

315.    Katz Technology Licensing denies all allegations set forth in Paragraph 315.

316.    Katz Technology Licensing denies all allegations set forth in Paragraph 316.

317.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '120 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 317.

318.    Katz Technology Licensing denies all allegations set forth in Paragraph 318.

## CLAIM XIV

## <u>THE '021 PATENT</u>

319.    In response to Paragraph 319, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-319.

320.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 320, and on that basis denies the allegations in that paragraph.

321.    Katz Technology Licensing denies all allegations set forth in Paragraph 321.

322.    Katz Technology Licensing denies all allegations set forth in Paragraph 322.

323.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '021 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 323.

324.    Katz Technology Licensing denies all allegations set forth in Paragraph 324.

## CLAIM XV
## <u>THE '065 PATENT</u>

325.    In response to Paragraph 325, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-324.

326.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 326, and on that basis denies the allegations in that paragraph.

327.    Katz Technology Licensing denies all allegations set forth in Paragraph 327.

328.    Katz Technology Licensing denies all allegations set forth in Paragraph 328.

329.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '065 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 329.

330.    Katz Technology Licensing denies all allegations set forth in Paragraph 330.

## CLAIM XVI
## <u>THE '965 PATENT</u>

331.    In response to Paragraph 331, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-330.

332.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 332, and on that basis denies the allegations in that paragraph.

333.    Katz Technology Licensing denies all allegations set forth in Paragraph 333.

334.    Katz Technology Licensing denies all allegations set forth in Paragraph 334.

335.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '965 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 2335.

336.    Katz Technology Licensing denies all allegations set forth in Paragraph 336.

## CLAIM XVII
## THE '703 PATENT

337.    In response to Paragraph 337, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-336.

338.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 338, and on that basis denies the allegations in that paragraph.

339.    Katz Technology Licensing denies all allegations set forth in Paragraph 339.

340.    Katz Technology Licensing denies all allegations set forth in Paragraph 340.

341.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '703 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 341.

57

342.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 342.

## CLAIM XVII
## THE '223 PATENT

343.    In response to Paragraph 343, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-342.

344.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 344, and on that basis denies the allegations in that paragraph.

345.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 345.

346.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 346.

347.    Katz    Technology    Licensing    admits    that    an    actual    and    justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '223 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 347.

348.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 348.

## CLAIM IX
## THE '415 PATENT

349.    In response to Paragraph 349, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-348.

350.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 350, and on that basis denies the allegations in that paragraph.

351.    Katz    Technology    Licensing    denies    all    allegations    set    forth    in Paragraph 351.

352.    Katz Technology Licensing denies all allegations set forth in Paragraph 352.

353.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '415 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 353.

354.    Katz Technology Licensing denies all allegations set forth in Paragraph 354.

## CLAIM XX

## THE '360 PATENT

355.    In response to Paragraph 355, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-354.

356.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 356, and on that basis denies the allegations in that paragraph.

357.    Katz Technology Licensing denies all allegations set forth in Paragraph 357.

358.    Katz Technology Licensing denies all allegations set forth in Paragraph 358.

359.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '360 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 359.

360.    Katz Technology Licensing denies all allegations set forth in Paragraph 360.

**CLAIM XXI**

**THE '156 PATENT**

361.    In response to Paragraph 361, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-360.

362.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 362, and on that basis denies the allegations in that paragraph.

363.    Katz Technology Licensing denies all allegations set forth in Paragraph 363.

364.    Katz Technology Licensing denies all allegations set forth in Paragraph 364.

365.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '156 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 365.

366.    Katz Technology Licensing denies all allegations set forth in Paragraph 366.

**CLAIM XXII**

**THE '134 PATENT**

367.    In response to Paragraph 367, Katz Technology Licensing incorporates by reference the allegations set forth in Paragraphs 1-366.

368.    Katz Technology Licensing lacks information or belief to answer the allegations in Paragraph 368, and on that basis denies the allegations in that paragraph.

369.    Katz Technology Licensing denies all allegations set forth in Paragraph 369.

370.    Katz Technology Licensing denies all allegations set forth in Paragraph 370.

60

371.    Katz Technology Licensing admits that an actual and justiciable controversy exists between CVS and Katz Technology Licensing regarding validity and infringement of the '134 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 371.

372.    Katz Technology Licensing denies all allegations set forth in Paragraph 372.

## PRAYER FOR RELIEF

Katz Technology Licensing denies that CVS is entitled to any of the relief requested in its prayer for relief.  Katz Technology Licensing respectfully requests that the Court enter judgment in its favor and against CVS on all of CVS's claims; that the Court find this case exceptional and award Katz Technology Licensing its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and that the Court award Katz Technology Licensing such other further relief as the Court deems appropriate.

## KATZ TECHNOLOGY LICENSING'S COUNTERCLAIM FOR PATENT INFRINGEMENT

Pursuant to Federal Rule of Civil Procedure 13, Katz Technology Licensing hereby asserts the following counterclaims against CVS and avers as follows:

## NATURE AND BASIS OF ACTION

1.    This is an action arising under the United States Patent Act, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

2.    Katz Technology Licensing is a California limited partnership with its principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

3.    According to its complaint, CVS Corporation ("CVS") is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

61

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331 and 1338(a).

5.      This Court has personal jurisdiction over CVS by virtue of the fact that CVS has submitted to the jurisdiction of this court by filing the instant action, and because, on information and belief, CVS is a Delaware corporation and has a registered agent in Delaware.

6.      Venue is proper in this judicial district under 28 U.S.C. sections 1391(c) and 1400(b).

## BACKGROUND

7.      Ronald A. Katz ("Mr. Katz"), founder of Katz Technology Licensing, is the sole inventor of each of the patents-in-suit.  Mr. Katz has been widely recognized as one of the most prolific and successful inventors of our time, and his inventions over the last forty-plus years have been utilized by literally millions of people.

8.      In 1961, Mr. Katz co-founded Telecredit Inc. ("Telecredit"), the first company to provide online, real-time credit authorization, allowing merchants to verify checks over the telephone.  Further innovations from Telecredit include the first online, real-time, point-of-sale credit verification terminal, which enabled merchants to verify checks without requiring the assistance of a live operator, and the first device that used and updated magnetically-encoded cards in automated teller machines.  Multiple patents issued from these innovations, including patents co-invented by Mr. Katz.

9.      Telecredit was eventually acquired by Equifax, and has now been spun off as Certegy, a public company traded on the New York Stock Exchange.  Certegy continues to provide services in the credit and check verification field established by Mr. Katz and Telecredit.

10.     Mr. Katz's inventions have not been limited to telephonic check verification.  Indeed, Mr. Katz is responsible for advancements in many fields of technology.

Among his most prominent and well-known innovations are those in the field of interactive call processing. Mr. Katz's inventions in that field are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services.

11. The first of Mr. Katz's interactive call processing patents issued on December 20, 1988. More than fifty U.S. patents have issued to Mr. Katz for his inventions in the interactive call-processing field, including each of the patents-in-suit.

12. In 1988, Mr. Katz partnered with American Express to establish FDR Interactive Technologies, later renamed Call Interactive, to provide interactive call processing services based on Mr. Katz's inventions. The American Express business unit involved in this joint venture later became known as First Data.

13. Early clients of Call Interactive included The New York Times, ABC's Monday Night Football, KABC Radio, CBS News, and Beatrice Foods (Hunt-Wesson division).

14. Many of these clients utilized Call Interactive technology for high-profile events. For example, CBS News hired Call Interactive to operate an interactive, real-time telephone poll to gauge viewer reaction to President George H.W. Bush's 1992 State of the Union address.

15. Mr. Katz sold his interest in Call Interactive to American Express in 1989 but continued to provide advisory services to Call Interactive until 1992. American Express later spun off the First Data business unit into a separate corporation, and with that new entity went Mr. Katz's interactive call processing patents and the Call Interactive call processing business. The former Call Interactive, now known as First Data Voice Services, continues to provide call processing solutions today.

16.    In 1994, Mr. Katz formed Katz Technology Licensing, which acquired the rights to the entire interactive call processing patent portfolio, including the rights to each of the patents-in-suit, from First Data, the owner of all of the Katz interactive call processing patents at that time.

17.    The marketplace has clearly recognized the value of Mr. Katz's inventions.  Indeed, over one hundred fifty companies have licensed the patents-in-suit. Licensees include IBM, Hewlett-Packard, Bank of America, JPMorgan Chase, Wells Fargo, HSBC, AT&T, Verizon, Sprint, Microsoft, Delta Airlines, Merck, Sears, Citibank, and the Home Shopping Network.  These licensees and others acknowledge the applicability of the patents-in-suit to multiple fields of use, including but not limited to financial services call processing, automated securities transactions, automated credit card authorization services, automated wireless telecommunication services and support, automated health care services, and product and service support.

18.    Each of the defendants employs the inventions of certain of the patents-in-suit.  Katz Technology Licensing, through its licensing arm A2D, L.P., has repeatedly attempted to engage each defendant in licensing negotiations, but to date, none of the defendants has agreed to take a license to any of the patents-in-suit.

**THE ASSERTED PATENTS**

19.    On December 20, 1988, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,792,968 (the "'968 Patent") to Ronald A. Katz for an invention entitled "Statistical Analysis System For Use With Public Communication Facility."  The '968 Patent expired on December 20, 2005.

20.    On May 29, 1990, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,930,150 (the "'150 Patent") to Ronald A. Katz for an

invention entitled "Telephonic Interface Control System." The '150 Patent expired on December 20, 2005.

21.    On July 7, 1992, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,128,984 (the "'984 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

22.    On October 5, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,251,252 (the "'252 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

23.    On October 19, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,255,309 (the "'309 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '309 Patent expired on December 20, 2005.

24.    On September 27, 1994, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,351,285 (the "'285 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System." The '285 Patent expired on December 20, 2005.

25.    On October 1, 1996, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,561,707 (the "'707 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '707 Patent expired on December 20, 2005.

26.    On November 4, 1997, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,684,863 (the "'863 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '863 Patent expired on December 20, 2005.

27.     On July 28, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,787,156 (the "'156 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Lottery System."  The '156 Patent expired on December 20, 2005.

28.     On September 29, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,815,551 (the "'551 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '551 Patent expired on December 20, 2005.

29.     On October 27, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,828,734 (the "'734 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

30.     On April 27, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,898,762 (the "'762 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '762 Patent expired on December 20, 2005.

31.     On June 29, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,917,893 (the "'893 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System."  The '893 Patent expired on December 20, 2005.

32.     On October 26, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,974,120 (the "'120 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

33.     On March 28, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No.6,044,135 (the "'135 Patent") to Ronald A. Katz for

an invention entitled "Telephone-Interface Lottery System." The '135 Patent expired on July 10, 2005.

34.     On November 14, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,148,065 (the "'065 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '065 Patent expired on July 10, 2005.

35.     On January 1, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,335,965 (the "'965 Patent") to Ronald A. Katz for an invention entitled "Voice-Data Telephonic Interface Control System." The '965 Patent expired on December 20, 2005.

36.     On February 19, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,349,134 (the "'134 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '134 Patent expired on December 20, 2005.

37.     On August 13, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,434,223 (the "'223 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity." The '223 Patent expired on July 10, 2005.

38.     On January 13, 2004, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,678,360 (the "'360 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '360 Patent expired on July 10, 2005.

## FIRST CLAIM (PATENT INFRINGEMENT)

39.    Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-38 of this Complaint as if fully set forth herein.

40.    On information and belief, CVS operates pharmacies in the approximately 43 states in the U.S.

41.    On information and belief, CVS uses infringing call processing systems to offer automated customer service and prescription refill functions to their customers. Using an automated system, in some instances in connection with operators, CVS allows its customers to place prescription refill orders, access pharmacy information, and perform various other functions, and also allows a physician or medical office to authorize refills and perform various other functions.

42.    Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '135, '150, '156, '223, '252, '285, '309, '360, '551, '707, '734, '762, '863, '893, '965, '968, and '984 Patents.

43.    On information and belief, in its automated pharmacy service operations described in Paragraph 41 (collectively, the "Accused Services"), CVS has been and is now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 42 by making, using, offering to sell, or selling the Accused Services.

44.    On information and belief, CVS continues to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734, and '984 Patents by making, using, offering to sell, or selling the Accused Services.

45.    CVS' infringement of the patents identified in Paragraph 42 has been and is willful.

46.     CVS' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court. Katz Technology Licensing has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ronald A. Katz Technology Licensing, L.P., respectfully requests that this Court enter judgment in its favor and against CVS and grant the following relief:

1.     Adjudge that CVS has been and is infringing one or more claims of the patents identified in Paragraph 42 of this Counterclaim by offering the Accused Services;

2.     Adjudge that CVS' infringement has been and is willful;

3.     Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining CVS, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

4.     Order an accounting for damages resulting from CVS' infringement of the patents identified in Paragraph 42 of this Counterclaim;

5.     Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for CVS' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

6.     Enter an order, pursuant to 35 U.S.C. § 284, and based on CVS' willful infringement, trebling all damages awarded to Katz Technology Licensing and against CVS;

7.     Enter an order, pursuant to 35 U.S.C. § 285, finding that this is an exceptional case and awarding to Katz Technology Licensing its reasonable attorneys' fees incurred in this action; and

8.     Award such other relief as the Court may deem appropriate and just under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, Katz Technology Licensing demands a trial by jury of all claims and all issues triable as of right by jury in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney

OF COUNSEL:

HELLER EHRMAN LLP
Robert T. Haslam
Andrew C. Byrnes
275 Middlefield Road
Menlo Park, CA 94025-3506
Telephone: 650.324.7000
robert.haslam@hellerehrman.com
andrew.byrnes@hellerehrman.com

Michael K. Plimack
Dale A. Rice
333 Bush Street
San Francisco, CA 94104-2878
Telephone: 415.772.6000
michael.plimack@hellerehrman.com
dale.rice@hellerehrman.com

February 15, 2007
742052

Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200
mgraham@mnat.com
jheaney@mnat.com
bschladweiler@mnat.com

*Attorneys for Plaintiff*
*Ronald A. Katz Technology Licensing, L.P.*

70

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following Kelly Farnan, Steven J. Balick and Sean T. O'Kelly.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 15, 2007 upon the following individuals in the manner indicated:

<u>**BY E-MAIL**</u>

Kelly Farnan
Richards Layton & Finger
farnan@rlf.com

Patrick J. Flinn
Alston & Bird LLP
Patrick.flinn@alston.com

Steven J. Balick
Ashby & Geddes
sbalick@ashby-geddes.com

Charles S. Barquist
Morrison & Forester LLP
cbarquist@mofo.com

Sean T. O'Kelly
Cross & Simon, LLC
sokelly@crosslaw.com

*/s/* Julia Heaney
_____
Julia Heaney (#3052)
jheaney@mnat.com